# CHARLESTON.

## MASLIN'S EX'RS *v.* HIETT.

Submitted September 10, 1892.—Decided November 19, 1892.

1. LIMITATIONS OF ACTIONS—PROMISSORY NOTES—WAR BETWEEN THE STATES.

Under the act of limitations of 1882 (Acts 1882, c. 102, ? 6) a note given in May, 1861, is barred by the lapse of five years from the date of its maturity, after excluding from the computation the period during which the right of action was obstructed by the civil and by the subsequent removal of the promisor from the State.

2. LIMITATIONS OF ACTIONS—CONSTRUCTION OF STATUTES.

Statutes of limitations are never to be construed retrospectively, unless such construction is required by express command or by necessary and unavoidable implication.

3. RESIDENCE—INTENTION—ANIMUS REVERTENDI.

The question of residence is one of intention, and the old resi-

dence is not considered as lost or abandoned so long as the *animus revertendi* remains.

4. LACHES—WAIVER—PROMISSORY NOTES—PRESUMPTION.

Courts of equity always stimulate and reward promptness and diligence, and discourage laches and stale claims; and in a case where suit was brought on a note payable on demand,.and more than twenty six years had elapsed between the maturity of the note and the institution of the suit, and the deceased promisee had lived for more than twenty five years in easy access to and close association with the promisor, and never during the whole of this period had made any demand whatever, a court of equity will readily presume that the testator had waived and abandoned all thought of collecting this note.

5. PROMISSORY NOTES—RELEASE—CONTRACT.

Where a father or other relative pays one half of a joint note on behalf of the promisor in consideration of the fact that the promisee will release such promisor from payment of the other half, and the contract is executed, the money received, and the release indorsed on the note, such a transaction constitutes a valid contract, of which said promisor can avail himself when sued for the remaining half of said note.

6. PROMISSORY NOTES—RELEASE.

Ths release of one joint or joint and several promisor is, generally speaking, a release of all.

*R. W. Monroe* for appellant cited 9 W. Va. 633; 29 Gratt. 240; Whar. Ev. § 482; 1 Am. Lead. Cas. 711; 2 Kent (s. p.) 430, n. (f); U. S. Digest (1846) 102, Div. 6, 8–10, 13, 14; 1 Shep. Touch. 323.

*H. B. Gilkeson* for appellee cited 9 W. Va. 626–630; 21 W. Va. 324; 15 W. Va. 87–89; 95 U. S. Rep. 633; 76 Am. Dec. 287, 758; 3 Pet. 290; 20 Gratt. 222–226; 4 W. Va. 536; Id. 538; 12 W. Va. 757; 30 Gratt. 718; 4 Munf. 398; Drake Att. § 65; 33 Gratt. 180; 3 W. Va. 405; 43 Am. Dec. 586; 3 Am. Dec. 444, 445; 1 Patt. & H. 34; 1 Sto. Eq. Juris. § 498; 11 Leigh 390.

LUCAS, PRESIDENT :

This was a suit of foreign attachment brought by the executors of Thomas Maslin against James Hiett and Eugene Alexander, late partners doing business under the name of Hiett & Alexander. The summons and return thereon are not in the record, and it is impossible, therefore, to ascertain whether the co-partner, Eugene Alexander,

was served ; nor is there anything in the record to indicate an appearance on his part or an abatement of the suit as to him.

The bill, which was filed on the 27th day of June, 1887, sets out that on the 11th May, 1861, the defendants executed to Thomas Maslin, their testator, a certain promissory note, which being exhibited is as follows :·

"Exhibit.   One hundred and nine dollars and twenty five cents.   On demand, we promise to pay to Thos. Maslin one hundred and nine dollars and twenty five cents, for value received.

"Witness the signature of our firm, this 11th day of May, 1861.

"HIETT & ALEXANDER."

The following endorsement is upon the back of said note :

"1877, Jan. 14th.   Received on this note from S. H. Alexander, one hundred and five dollars and sixty nine cents, being Eugene Alexander's half, and he is hereby released from the payment of Hiett's half of the note. One hundred and five dollars and sixty nine cents.

(Signed.)   THOS. MASLIN."

It is further averred that said firm was dissolved more than twenty years ago, and that there were no assets for the payment of debts, and both defendants left the State years ago, to wit, in 1865 or 1866 or 1867, and have resided in other States ever since.   The attachment was issued and served upon the real estate of the defendant Hiett in the county of Hampshire.   The defendant Hiett appeared and answered.   He did not admit or deny the execution of the alleged promissory note, but pleaded in defence against it the benefit of the legal presumption that it had been paid.

With regard to his residence, he states that he resided in Hardy county and remained there until the spring of 1866, when he removed to the county of Hampshire and remained until spring of 1870, when his wife and family returned to his father-in-law's, in the town of Moorefield, the place, also, of said testator's residence, and remained there until the fall of that year ; that in the month of April or May, 1870, respondent went to the state of Missouri to look at

the country with a view to his removal thither, and remained there during the summer; that in the fall of the year 1870 he returned to West Virginia and openly removed with his family to Missouri, where he has continued to reside up to this time. He alleges, moreover, that the testator was well acquainted with the movements of respondent—knew his place of residence in Missouri—because a frequent and continuous friendly correspondence was kept up between their respective families up to the time of the testator's death, yet during all the time aforesaid no demand was ever made by the testator for the payment of the alleged promissory note. The respondent insists on the statute of limitations and asks that the attachment be quashed.

This answer was replied to generally and was followed by two amended bills of complaint, in which the complainants plead, by way of rebuttal, that the collection of the note in question was obstructed by war from the date of the note, May 11, 1861, to the 21st of May, 1866; and, secondly, that the right to bring an action was further obstructed from the 1st of April, 1870, to the date of the institution of this suit by the removal of the defendant Hiett from this State to the State of Missouri. The amended bill further sets out that from the date of the note until April 9, 1865, war was flagrant in the county of Hardy; that Circuit Courts were not held during said period; that the judge and clerk of said court and attorneys were all absent, having enlisted in the Southern army; that the county was occupied sometimes by one and sometimes by the other of the opposing forces; that claims could not be safely lodged in the clerk's office; that military law generally prevailed to the exclusion of the civil law; and that both of the defendants during the whole of said period were absent from said county as soldiers in the army of the Confederate States. The plaintiffs claim that the period from the 9th of April, 1865, to the 21st of May, 1866, should not be computed, nor should the period from the 1st of April, 1870, to the date of the suit be reckoned. They claim, further, that the period of limitation applicable to this case is not five years, but ten.

To the amended bill defendant Hiett filed an amended answer, in which he corrected the statement of the former answer as to his residence in 1865. He now claims that he in fact resided in Hampshire county during the year 1865, after the close of the war. He further alleges that the Circuit Court of Hampshire county was open continuously after the 1st day of July, 1865, and alleges, further, that a Circuit Court was held there in May, 1861; also, in August or September of the same year. He alleges that the Circuit Court of Hardy county was open on the 18th day of March, 1866, and unobstructed thereafter. Respondent insists on the 15th November, 1870, as the date of his removal from this State to Missouri.

The plaintiffs filed a second amended bill, in which they take issue as to the obstruction of courts in both Hampshire and Hardy counties, and claim that in the county of Hampshire the prosecution of their right in the Circuit Court was obstructed until the 7th of May, 1866.

The defendant James Hiett likewise tendered to the court a plea to the effect that he was released, as appears by the indorsement on the note, which, as we have seen from the exhibit, was made on the 14th day of January, 1877. It appears from the final decree that this plea was filed and replied to generally by the plaintiffs, but was stricken out by the court.

The first question to be considered in this case is whether the debt sued upon was barred by the statute of limitations either by its direct application or by the staleness of the claim and the presumption of payment or of waiver and abandonment by failure to demand within a reasonable time.

In the case of *Van Winkle* v. *Blackford*, it was held that, if the equitable title be not sued upon within the time within which a legal title of the same nature ought to be sued upon to prevent the bar created by the statute, the court acting by analogy to the statute will not relieve. If the party be guilty of such *laches* in prosecuting his equitable title as would bar him, if his title was solely at law, he shall be barred in equity; and where a personal action is barred in the common-law courts, and a bill of relief is

prayed in a court of equity, the latter court will decree the party to be barred by the statute of limitations. 33 W. Va. 582 (11 S. E. Rep. 26) and authorities there cited. The statute of limitations, runs against a note payable on demand from the date of the note. Wood, Lim. Act. 257; Busw. Lim. § 157. In actions at law any particular circumstance relied upon to avoid the statute, when the latter would *prima facie* bar the debt, has to be introduced by special replication, and in equity by an amended bill. In the present case the first obstruction set up by the amended bill is the intervention of the late Civil War, and the second is the removal of the defendant Hiett from the State.

And first with reference to obstruction by the war. The complainants, with some diffidence, it is true, take the ground, that the period of limitation in this case should be ten years rather than five. We do not think this position tenable. Code 1868, chapter 104, s. 6, provided that "every action * * * upon a contract by writing signed by the party to be charged thereby or by his agent, but not under seal, *heretofore executed, within five years, but, if executed after the passage of this act,* within ten years." The corresponding act of 1882 left out the words which I have italicized. Hence it has been supposed that the latter act should be construed retrospectively. It is conceded, however, that statutes of limitation are never to be so construed, unless the language thereof is so unequivocal as to compel that construction. The rule is thus stated: "As a general rule for the interpretation of statutes it may be laid down, that they should never be allowed a retroactive operation, where this is not required by express command or by necessary and unavoidable implication. Without such implication or command they speak and operate upon the future only." Busw. Lim. § 13, citing *Murray* v. *Gibson*, 15 How. 423, and other cases.

The reason for the omission of the above italicized words in the act of 1882 (see Acts 1882, c. 102, § 6) was obviously because some thirteen years had elapsed since the Code of 1868 went into effect, and it was not contemplated that there would arise a case where the five years limit would not already have barred unsealed instruments of writing,

executed prior to April 1, 1869, when the Code went into effect. Where it is plain, however, that obstructions have existed for a period of twenty one years, thus creating an exceptional case, we will not construe the act of 1882 retrospectively, when applied to such a case, since its language does not imperatively demand such a construction, and such construction would evidently work hardship and injustice.

Fortunately for the court, the attorneys for the parties have signed an agreed statement of facts which fixes the dates of the obstructions to the respective Circuit Courts of Hardy and Hampshire counties by reason of the Civil War. The court below was governed by this agreement in its finding of the facts. In the final decree, from which this appeal is taken, the Circuit Court found that "James Hiett removed from the State in April, 1870, and has since continued to reside out of the State; that after deducting from the computation of time the period from the 1st day of June, 1861, to the 2d day of July, 1865, during the whole of which the right of action of plaintiffs was obstructed by the late war, and also deducting the time during which such right was obstructed by defendant's removal from the State, five years had not elapsed between the accrual of the right of action to the plaintiffs' testator and the institution of this suit, and that plaintiffs' claim is not barred by the statute of limitations; and, the court now sustaining the objection to defendant Hiett's special plea of release, heretofore tendered, it is therefore adjudged, ordered and decreed that the plaintiffs do recover of the defendant James Hiett the sum of one hundred and fifty three dollars and twenty six cents with interest," *etc.* It will thus be seen that the Circuit Court did not designate the particular county whose Circuit Court was obstructed for the period named, although the agreement of counsel had fixed this matter as to the Circuit Court of Hardy county, and also as to the Circuit Court of Hampshire county.

The agreement of counsel states that the last term of the Circuit Court of Hampshire county before the war was held in April, 1861; and the first clerk of said court after the war qualified on July 1, 1865, and gave bond July 4th

following; that the first clerk of the Circuit Court of Hardy county after the war qualified on March 17, 1866, and the last Circuit Court in Hardy county before the war was in August or September, 1861. The Circuit Court seems to have confined its consideration to the county of Hampshire, and perhaps left out of view that the defendant Hiett resided in Hardy county until 1862, when he enlisted in the Confederate army, and that after the war closed, in 1865 he resided in Hampshire county.

To determine the period of obstruction, therefore, we must consider when the Circuit Court of Hardy county was closed by war, and when the Circuit Court of Hampshire county was re-opened after the war. According to the agreement of counsel we should say that the Circuit Court of Hardy was closed September 1, 1861, and the Circuit Court of Hampshire was reopened on the 1st day of July, 1865. The period to be deducted, therefore, in this case, by reason of war, should be from September 1, 1861, until July 1, 1865, making a period of three years and ten months.

Conceding, therefore, that the Circuit Court found the fact correctly that the respondent removed from the State April 1, 1870, the total period from the date of the note (May 11, 1861) to April 1, 1870, is eight years, ten months, and twenty days, and after subtracting from this total period the period of obstruction, as above ascertained, it will be found that the limitation of five years had already barred this note on April 1, 1870, when it is claimed that the respondent removed from the State. But in point of fact, when we come to consider that the period of obstruction is a positive fact, in the establishment of which the burden of proof is clearly upon the plaintiffs, it is quite clear that they have not met that burden, but that the preponderance of evidence is in favor of the position of respondent, who swears that he did not permanently move to Missouri until November 15, 1870. The question of residence is one of intention, and the old residence is not considered as lost or abandoned as long as the *animus revertendi* remains.

Under the definition of the "usual place of abode," as de-

fined by the Supreme Court of Appeals of Virginia, I have no doubt that process served in Hardy county by being left with the wife of the respondent during the interim between April 1; 1870, and November 15, 1870, would have constituted lawful service for the institution of an action. Deducting this period of eight months and a half, there can be no manner of doubt that, before any obstruction could have arisen by reason of the removal of the respondent to another state, this debt was barred by the statute of limitations.

Such a finding of the facts is entirely in accord with the principles of courts of equity, which stimulate and reward promptness and diligence, and always discourage laches and stale claims. When we reflect that more than twenty six years had elapsed between the maturity of this note and the institution of this suit ; that the promisee lived for more than twenty five years in easy access to and close association with the promisor, and never during the whole of this period made any demand whatever, although the note was payable on demand—a court of equity will readily presume that the testator waived and abandoned all thought of collecting and desire to collect this note. Courts of equity would hardly be true to their own principles, did they exercise ingenuity to relieve the presumption of waiver and payment when applied to a claim payable on demand, for which the payee never made a demand throughout a period of twenty five years, and which was only demanded by his executors more than twenty six years after its maturity.

Says Mr. Wood: "Generally, it may be said to be an invariable rule that courts of equity will not grant relief to a party, who in view of the circumstances of the case has been guilty of gross laches, and that parties are required to use reasonable diligence in the enforcement of their rights."' Wood, Lim. Act. 123.

We believe this to be the general doctrine, and that this is a case eminently proper for its application.

We come finally to consider what was the effect of the release of Eugene Alexander, the other copartner, as indorsed on the note and exhibited by the complainants as

part of their bill.  The point presented is a very unusual one and may be stated thus:  A father or other relative pays one half of a joint note on behalf of his son or other relative in consideration of the fact that the promisee will release such promisor from the payment of the other half.  Does such a transaction constitute a valid contract, of which said promisor can avail himself when sued for the remaining half of the note?

It will be observed that this case is totally different from one, in which the promisee seeks by the payment of one half of the note himself to enforce a contract to release him from payment of the residue.  In the latter case there is no valid consideration, because a person can not by the partial discharge of a duty support a consideration to relieve himself from full and complete compliance with his original contract.  But when the consideration proceeds from a third party, upon whom no obligation whatever has rested, and the debtor voluntarily accepts the consideration offered for the release, and the contract is fully executed, it would seem to be inequitable to permit the creditor to ignore such a contract and pursue the debtor for the full amount, notwithstanding this executed contract for release and relinquishment.  It seems to me that the transaction is as if a disinterested party, actuated by love and affection or other kindred motive, should purchase the note at fifty cents on the dollar, and make a present of it to the payee, whom he sought to relieve.

When we come to examine the authorities, they seem to sustain the validity of such a release as I have described. Upon this subject Mr. Bishop, in his work on Contracts has this to say:

"When an ascertained sum of money is fully due and payable from one to another, if the creditor accepts a less sum in satisfaction or promises to take less, the payment in the one instance is a discharge of only so much as it amounts to, and in the other the promise is void.  This in most of the cases is assumed to be the law settled beyond controversy; and, on principle, there is here no consideration, and the mere unexecuted promise to accept the less sum is void.  But under our third subtitle we shall see that

an executed contract requires no consideration. So that, if on the part payment of a debt, though fully due, the creditor forgives the rest in any form which will constitute a gift, he can no more maintain a suit for it afterwards than for any other gift. And such is believed to be the true law." Bish. Cont. § 50.

The author enforces the same doctrine subsequently in sections 81 and 82. This position the author fortifies by abundance of authorities; and, if it be correct, how much stronger is the case we now have in hand, where the consideration has proceeded from a third party, who has for a consideration voluntarily received and accepted upon a contract fully executed purchased the release of the original payee. I am inclined to think that the release as to Eugene Alexander is valid and obligatory upon the complainants.

If this position be correct, and the release be effectual to discharge the defendant Eugene Alexander, it follows that the joint contractor, the defendant Hiett, is likewise released, upon the well-known principle that the release of one joint promisor is a release of all. *Tuckerman* v. *Newhall*, 17 Mass. 581; *Rowley* v. *Stoddard*, 7 Johns. 207; *Peasley* v. *Boatwright*, 2 Leigh, 196.

The general proposition of law is thus stated by Mr. Bishop: "One, to whom two or more persons have made a joint promise or covenant, is on its breach required by the course of judicial procedure to sue all jointly, if all are of full age and alive; and should he proceed against a less number, his suit, if properly defended, will fail. So that all can avail themselves of a release to any one. Whence the rule that the release of one discharges all—a rule which perhaps ordinarily, yet not always, prevails in equity as at law." Bish. Cont. § 869. And the same rule prevails whether the note be joint only, or joint and several. Id. § 870.

Our conclusion upon the whole case is that the bill should have been dismissed, the attachment abated, and the defendant discharged.

REVERSED AND DISMISSED.