## GILLESPIE v. SMITH et al.

(District Court, N. D. West Virginia.   February 11, 1916.)

1. ALTERATION OF INSTRUMENTS ⬥⟿7—MATERIALITY—INSERTING DATE.

Where at the time a release was executed the closing line, "Witness my hand and seal this 29th day of September, 1909," did not contain the words "29th" and "September," the subsequent insertion of these words was not such an alteration or addition to the writing as rendered it void; that being the true date of the execution of the release.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 34–39; Dec. Dig. ⬥⟿7.]

2. ALTERATION OF INSTRUMENTS ⬥⟿8—MATERIALITY—SURPLUSAGE.

Where a release by plaintiff of a surety on the bond of his father's executor was signed and sealed by him with his own hand, no witness to his signature was required, and the indorsement on the release after its execution of the words, "Witness to signature, John M. Smith," was surplusage, and not an alteration of the instrument.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 40–46; Dec. Dig. ⬥⟿8.]

3. EXECUTORS AND ADMINISTRATORS ⬥⟿531—CONSTRUCTION—EFFECT OF SEAL.

Where plaintiff's release of a surety on the bond of his father's executor from liability was under seal, the seal was conclusive evidence of a sufficient consideration, especially where it acknowledged payment of $1 and alleged other considerations, and there was evidence that $1 was in fact paid.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2406–2430; Dec. Dig. ⬥⟿531.]

4. RELEASE ⬥⟿12—CONSIDERATION—NECESSITY.

Under ordinary conditions a man may without consideration voluntarily forgive his debtor his debt, though he may have been an unjust steward.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 18–20; Dec. Dig. ⬥⟿12.]

5. FRAUD ⬥⟿50—PRESUMPTIONS AND BURDEN OF PROOF.

Fraud is never presumed, but must be clearly shown.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ⬥⟿50.]

6. CONTRACTS ⬥⟿96—VALIDITY—UNDUE INFLUENCE.

Undue influence assumes a condition existing where such baneful influence can be exerted.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 441, 1155, 1169; Dec. Dig. ⬥⟿96.]

7. EXECUTORS AND ADMINISTRATORS ⬥⟿531—SURETIES ON BOND—RELEASE—VALIDITY—FRAUD OR UNDUE INFLUENCE.

Plaintiff's uncle was surety on the bond of the executor of plaintiff's father, and plaintiff lived with the executor in the largest town in the county, while the uncle, a farmer, lived some 20 or more miles away. The executor's management of the estate was such as to charge the sureties with liability, and plaintiff, who was not illiterate, but, on the contrary, college bred, was not ignorant of the executor's affairs but knew of at least one unfortunate investment by the executor. The executor and the uncle were his sole blood relatives and had reared and cared for him from his thirteenth year to his majority. The uncle stated to plaintiff that he was an old man, desirous of settling up his affairs and turning over his farm to his sons, and for these reasons asked plaintiff to relieve him from the suretyship obligation. It was claimed that the uncle repre-

⬥⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sented that this would not affect the liability of the other sureties, and the release was executed under the belief on the part of both parties that such would be the legal effect of the release, but both parties were sincere in so believing. *Held*, that the facts did not show that the release was obtained by fraud, misrepresentation, or undue influence.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2406–2430; Dec. Dig. ☞531.]

3. EXECUTORS AND ADMINISTRATORS ☞531—SURETIES ON BOND—DISCHARGE—RELATION OF COSURETY.

While, under ordinary conditions, the rule of stricti juris, or even strictissimi juris, is properly invoked in behalf of sureties, and they should be released from their obligation by any dealings which operate to change or increase their liabilities, a release by plaintiff of one of the joint and several sureties on the bond of his father's executor from liability released the other sureties only to the extent to which the released surety would have been liable upon the ultimate ascertainment of the sum to be paid by the solvent and responsible sureties, as the sureties stood in the same fiduciary relation to plaintiff as the executor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2406–2430; Dec. Dig. ☞531.]

In Equity. Suit by John J. Gillespie against Walter R. Smith and others. Decree for complainant.

Thomas P. Jacobs, of New Martinsville, W. Va., McCoy & Swiger, of Sistersville, W. Va., and Pugh & Pugh, of Columbus, Ohio, for plaintiff.

Boreman & Carter and C. B. Riggle, all of Middlebourne, W. Va., Arthur S. Dayton, of Philippi, W. Va., and Hogg & Hogg, of Pt. Pleasant, W. Va., for defendants.

DAYTON, District Judge. Gillespie has recovered in a state court a judgment against Walter R. Smith, executor of his father's estate, for $36,008.74 and $1,341.45 costs. Execution on this decree having been returned "No property found," he has instituted upon the law side of this court, an action of debt in the name of the state, at his relation, against said executor and the sureties upon his official bond. The sureties in said action at law have tendered a special plea, setting forth that Gillespie has, by writing under seal, released one of their number "from all and every obligation and liability as a surety or otherwise upon the said bond," and they aver that this release operated to release them all. Upon the tender of this plea in the law action. Gillespie filed this bill, in which he seeks to have this release annulled on the grounds that it was procured from him (a) by fraud, misrepresentation, and undue influence; (b) was without consideration; and (c) was materially changed after execution.

[1-4] This last contention can be at once disposed of. The release was prepared by an attorney in advance of its execution, and in the closing line, "Witness my hand and seal this 29th day of September, 1909," the figures "29th" and the word "September" were not incorporated, but inserted, after the paper was signed by Gillespie, by John M. Smith, the surety released, who also indorsed below the writing the words, "Witness to signature, John M. Smith." There is no ques-

tion but what the 29th day of September, 1909, was the true date this release was executed, and in no way has it been made apparent that the date of its execution is in any way material to the controversy here. The insertion of this date, therefore, I do not regard as such an alteration or addition to the writing as to render it void. The indorsement of the words "Witness to signature, John M. Smith," below, must be held to be surplusage, as no witness to the signature of Gillespie, who with his own hand signed and sealed it, was by law required.

Nor do I have difficulty in disposing of the second ground alleged against the validity of the release, that of lack of consideration; and this for the reasons that: At common law the part payment of a debt is not sufficient consideration for its discharge. Bailey v. Day, 26 Me. 88; Potter v. Green, 6 Allen (88 Mass.) 442. If the discharge be by a sealed instrument, it is of no consequence what the actual consideration may be, for the seal is conclusive evidence of sufficient consideration. Deering v. Moore, 86 Me. 181, 20 Atl. 988, 41 Am. St. Rep. 534. But, if this were not so, the instrument itself admits payment of one dollar and alleges other considerations; and, while Gillespie now denies payment of this dollar, Smith and his son say it was paid. The Supreme Court of Appeals of this state, in Rease v. Kittle, 56 W. Va. 269, 49 S. E. 150, has very strikingly illustrated the importance and effect of a dollar payment, set forth as paid in contracts. Finally, I have no doubt but what under ordinary conditions, a rational man may without consideration voluntarily forgive his debtor his debt, although he may have been an unjust steward.

[5-7] This brings us to the consideration of the first contention, that this release was obtained by fraud, misrepresentation, and undue influence. The direct evidence touching this is confined to the statements of the two men, Gillespie, the plaintiff, and John M. Smith, the released surety. It is not necessary to consume time in discussing it in detail. I have gone over it time and again, and the conviction has grown stronger in my mind each time that, so far as any charge of fraud or undue influence is concerned, it must be rejected. Fraud is never to be presumed, but must be clearly shown. Undue influence assumes a condition existing where such baneful influence can be exerted.

Touching the charge of fraud, the release stands admitted as having been executed, and there was nothing fraudulent on the part of John M. Smith stating to his nephew that he was an old man, desirous of settling up his affairs and of turning over his farm to his sons, and for these reasons asking him if he was willing to release him from this suretyship obligation. It is not to be assumed that this young man, Gillespie, was less able, under all the circumstances, to care for his own interests in this matter than this old farmer was of his. The farmer had lived his life some 20 or more miles away from Sistersville, the largest town in the county; the young man had lived his in this largest town, and in the home of the defaulting executor. He was not wholly ignorant of this executor's business affairs; on the contrary, he at least knew of the unfortunate Virginia real estate investment made by this executor, and himself had part in the effort to save it. He was not

illiterate; on the contrary, he was college bred. Again, there was nothing unnatural in this young man, looking on life with youth's confidence and faith in the future, and his ability to work out his own fortune without harassing his uncle, who was old and had a considerable family dependent upon him, being entirely willing to free the older man from this obligation. It is to be remembered that the Smiths were his sole blood relatives so far as the record discloses, and had reared and cared for him from his thirteenth year to his majority. His two possible interviews with this farmer uncle, or his single one according to his statement, touching the execution of this release, do not disclose such exercise of influence as seems to me to have rendered the conduct of Smith undue or unlawful.

Upon one point there can be no disagreement. Whether Smith made representation that his release would not affect the liability of the other sureties or not, it cannot be disputed that the release was executed under the clear understanding of both that it would not. If it is to be held that it in fact does operate to release such other sureties from liability, then we are confronted with the fact that it was executed under an innocent misconception of the law governing the matter. I say "innocent," because it seems to me clear that both parties were sincere in their conception of the legal effect of this paper. And that there was excuse for such conclusion by them will be clearly demonstrated by any one who undertakes to ascertain what the law is touching this question. I am persuaded from a careful examination that few legal propositions have been more confused by conflicting precedents than this one. This confusion can be very well illustrated by quoting from the legal encyclopedias and text-books. Cyc. says:

"Under the common-law rule, where cosureties were bound jointly, a release of one discharged all; but in equity the cosureties remained liable for their proportionate shares, and under the modern law, a covenant not to sue, or a release of one cosurety, does not discharge the others; but he remains liable for his proportionate share of the indebtedness, especially if the surety released has paid his own proportionate part." 32 Cyc. 156.

The American and English Encyclopædia of Law (2d Ed.) vol. 27, page 527, says:

"A surety is only partially discharged where the creditor releases a cosurety, and the result is the same whether the creditor obtains from the surety discharged by him his full proportion of the debt or merely executes the release voluntarily. As generally stated, the rule is that the remaining surety is exonerated to the extent to which he would have been entitled to contribution from the released surety. Some of the older decisions hold, or seem to hold, that the remaining surety in such case is wholly discharged at law, but the more equitable rule is now settled as stated above."

Elliott on Contracts, bk. 3, § 2064, says:

"The unconditional release of one joint or joint and several promisors is generally speaking a release of all: Provided, the release is without the consent of the cosureties or joint obligors."

Counsel for defendants, in their brief, have very rightly indicated that the proposition has been further complicated by reason of the abolition of the common-law for the Code practice by some of the

states and by special legislative enactments by others; but they insist that the common-law rule releases all the sureties, that the common law prevails in West Virginia, and that no statute has been enacted in the state modifying or repealing it in this particular, and they cite Maslin's Ex'rs v. Hiett, 37 W. Va. 15, 16 S. E. 437, and Rutherford v. Rutherford, 55 W. Va. 56, 47 S. E. 240, and further point out that Virginia now has a statute abrogating the rule, but before its passage adhered to it, as shown by the rulings in Blow v. Maynard, 2 Leigh (29 Va.) 29–59, Peasley v. Boatwright, 2 Leigh (29 Va.) 196, and Garnett v. Macon, 6 Call. (10 Va.) 308, Fed. Cas. No. 5,245. It is very difficult to resist the force of this argument. The question, however, is still further complicated by reason of the very varied number of conditions in which it may arise and has arisen in business transactions involving the relations of principal, sureties, creditors, and other interested parties, and the application of a general, and I may say arbitrary, rule of this character to all of such conditions and relations.

[8] Without extending the discussion to undue length, I may say that my study of the authorities has led me to believe that the tendency in the past has been to extend its scope and operation beyond its original purpose, and that in common-law states it may well be held to be subject to certain limitations and exceptions. The reason of the law is the life of the law. Under all ordinary conditions the rule of "stricti juris," or even "strictissimi juris," is properly invoked in behalf of sureties, and this for the reason that they assume a responsibility ordinarily without any expectation of pecuniary profit or gain. It is but reasonable and right, therefore, that they should be released from their obligation by any dealings which operate to change or increase their liabilities. Ward v. Tinkham, 65 Mich. 695, 32 N. W. 901. An every day illustration of such change or increase of liability is found in the undue extension of time to pay, by a creditor to the principal after he has received notice from the surety to sue. It would seem, too, that in the old common-law practice of England the rule under discussion may have arisen from the fact that bonds were almost wholly joint as to their obligors, and the release of one necessarily released all, because suit could be maintained against all only. Under the modern "joint and several" surety contract the reason for the rule is greatly lessened and modified. Be this as it may, it seems to me that in cases like this of fiduciary bonds, joint and several in character, taken by the state in the course of its legal care, custody, and administration of the estates of its "wards in chancery," another rule is applicable, to wit, that:

"A release given by the beneficiaries to a surety, in order to be upheld, must be shown to be fair and reasonable, because the sureties stand in the same fiduciary relation to the beneficiaries as the principal does." 11 Am. & Eng. Enc. of Law (2d Ed.) 896, citing Baines v. Barnes, 64 Ala. 375.

And applying this rule to this case, it would seem perfectly clear that these cosureties of Smith, who bound themselves jointly and severally to see to it that this estate of Gillespie should be properly administered and turned over to him when he became of age or to

his guardian during his minority by the executor, can urge no reasonable change or increase of their liabilities, provided Gillespie be held to remit and credit the full part of the liability that Smith would be liable for, if he had not been released in the ultimate ascertainment of the sum such sureties, or the solvent and responsible ones, may have to pay by reason of the executor's default. This seems to me to be just, reasonable, and in accord with equity and good conscience.

Therefore I will entertain this bill and enter a decree restraining the defendant sureties from using said release for other purpose than to secure for themselves, in the trial of the law action, credit for such a sum as Smith would be liable for if he had not been released, which sum must be a full and equal share of what the solvent sureties may have to pay or be liable for. No costs in this case will be awarded either side.