# CHARLESTON.

## REASE v. KITTLE.

Submitted June 17, 1904—Decided November 22, 1904.

56 269
59 351
60 79

56 269
e61 379
61 481
d61 483
e61 631

1.  CONTRACT—*Continuing Offer.*

    A contract in writing by which one party, for a valuable consideration, agrees to sell and convey to the other, a tract of

land for a specified price within a certain time thereafter, the whole amount of the purchase money to be paid in cash within such time, and, on failure to take and pay for the land within the time stipulated, the contract to be void, is a continuing offer to sell, and not revocable within the time limited.   (p. 278).

:2.   CONTRACT—*Option—Assignment.*

Before payment or tender of the purchase money within the time stipulated, such contract does not vest in the person to whom the offer of sale is made any title to the land, either legal or equitable, and his assignment of his rights under the contract passes no title to the assignee.   (p. 279).

:3.   CONTRACT—*Contract not Assignable.*

When such offer is made to a particular person, and not to the party and his assigns, it can be accepted and enforced by him alone, and an assignment thereof to a third party bestows no right upon the assignee to convert the offer into a contract of sale by tender, or payment, of the purchase money.   (p. 279).

·4.   CONTRACT—*Verbal Acceptance of Contract.*

Verbal acceptance of such contract without payment or tender of the purchase money, within the time limited, is not sufficient to convert the offer into a contract of sale.   (p. 280).

Appeal from Circuit Court, Barbour County.

Action by F. P. Rease against C. B. Kittle and others.   De-·cree for plaintiff, and defendant O. C. Womelsdorf appeals.

*Reversed.*

W. B. MAXWELL, for appellant.

J. B. WARE and FRED O. BLUE, for appellee.

POFFENBERGER, PRESIDENT:

The principal inquiry in this case is whether a continuing ·offer in writing under seal, to sell land, irrevocable because based upon a valuable consideration, and made to a particular person, vests in that person an equitable title to the land which he can convey to a third person or is capable of assignment to such third person.

C. B. Kittle executed and delivered to J. E. Howell such a contract which reads as follows, omitting formal parts and descriptions of the land:   "That the aforesaid C. B. Kittle has this day agreed to give the aforesaid J. E. Howell, an option

on a certain tract of land hereinafter described and bounded, containing fifty acres for the sum of $47.50-100 per acre, of which $1.00 cash in hand is paid the *recipt* of which is hereby acknowledged. Now *is* the aforesaid J. E. Howell pays the aforesaid C. B. Kittle the aforesaid sum of money before the *exposition* of 5 yrs. from this date, the aforesaid C. B. Kittle binds himself to make the aforesaid J. E. Howell a general warranty deed for the aforesaid tract of land hereinafter described. And it is further agreed that in case the aforesaid J. E. Howell fail to pay the aforesaid C. B. Kittle, the aforesaid sum of money before the expiration of five years from this date, then this contract is to be void."

Before the expiration of the time limit fixed by this paper Kittle conveyed the land to O. C. Womelsdorf by deed dated September 2, 1899, reciting a cash consideration of one thousand dollars. On the 12th day of February, 1900, Howell executed and delivered to F. P. Rease, a paper purporting to assign all his right to purchase said land, and all rights pertaining to said option, and further stipulating that whenever Howell should settle with Kittle, the amount due Kittle, about ninety dollars, should be paid Howell by Rease. On or about the 16th of November, 1900, Rease sent his agent to Kittle to close the option and pay the purchase price of the land, but the latter refused to accept the money or to make a deed, and Rease caused a written notice of his claim under the assignment from Howell, his own acceptance of the option according to its terms and his readiness and willingness to make payment of the purchase money, to be served on Kittle on the 16th day of November, 1900. Immediately afterwards, Rease brought this suit in equity to compel specific performance of the alleged contract, making Kittle, Womelsdorf, Howell and certain creditors of Kittle defendants, and the court granted the relief prayed for.

Some other features of the case, based upon facts not yet stated, will be noticed later on, as upon mature consideration they are considered insufficient to change the case as stated. They are postponed to avoid possibility of confusion in the discussion of the main question which is one of great importance in this State where so much valuable property is constantly

changing hands under instruments similar in character and form to the one above described.

That this contract, if such it may be termed, without acceptance in the manner therein prescribed, namely, payment of the whole amount of purchase money within the time limited, for it expressly says that if full payment is not made within that time, it shall be void, is a unilateral contract, binding only one party, and giving him no right of action in any event against the other party, seems to admit of no doubt. It is a mere offer on the part of Kittle to sell at a certain price at any time within five years, and it does not bind him to convey except upon payment of the entire purchase money. It contains no covenant on the part of Howell to take the land within the period of five years or at any other time. His failure to do so gives no right of action for damages nor can the contract be enforced against him in equity. It is well settled that ordinarily a court of equity will not compel specific performance of a contract when the agreement is of such nature that an action at law will not lie for damages for a breach of it. 5 Vern. Abr. 537. There are some exceptions to this rule in favor of contracts peculiar in their nature. Where the option is founded upon a valuable consideration, the holder of it may compel performance of the offer although there is no covenant on his part to take and pay for the property. Illustrations of this are found where a lease is taken which contains a stipulation providing that, at any time during the lease or at its expiration, the lessee shall have the right to purchase the property at a price named. By this, he is not bound to purchase and only has the privilege of doing so, but he may enforce specific performance of it by the lessor. And a purchaser of the land so leased, must take notice of this right of purchase in the optionee, for his possession is sufficient notice to put a stranger upon inquiry, and he is held to have knowledge of all rights on the part of the tenant which reasonable inquiry would have disclosed. *Kerr* v. *Day,* 14 Pa. St. 112, citing numerous English and American cases. "It is now well settled that an optional agreement to convey or renew a lease, without any covenant or obligation to purchase or accept, and without any mutuality of remedy will be enforced in equity, if made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true con-

sideration for it." *Hawralty* v. *Warren*, 3 C. E. Green (N. J.) 124, (90 Am. Dec. 613); *Backhouse* v. *Mohlen*, 3 Johns. 434; *Seton* v. *Slade*, 7 Ves. 265; *Fowle* v. *Freeman*, 9 Ves. 351; *Western* v. *Russell*, 3 Ves. & B. 192; *Aormand* v. *Anderson*, 2 Ball & B. 350; *Clason* v. *Bailey*, 14 Johns. 484; *Street Railway Co.* v. *Spenser*, 156 Pa. St. 85, (36 Am. St. 22); *House* v. *Jackson*, 24 Ore. 89; *Souffrain* v. *McDonald*, 27 Ind. 269; *Stansbury* v. *Fringer*, 11 Gill & John. (Md.) 149; *Maughlin* v. *Perry*. 35 Md. 353.

This apparent exception to the rule, harmonizes with other principles of the law, concerning rights founded upon consideration. Thus, a license coupled with an interest is irrevocable, while one unconnected with any interest on the part of the licensée is always revocable. An agency coupled with an interest is also irrevocable, but if the agent has no interest in the business his powers may be cut off at any time. A man may be willing to take a lease with the privilege of the purchase of the property, or a renewal of the lease but unwilling to accept it in any other way. The option of purchase inserted in the lease is the inducement to the contract on both sides. Without it the owner is unable to procure a contract of lease, and but for it, the lessee would not take the property. His purpose may be to build up a mercantile or other kind of business with a view to permanent location, if he succeeds, and, with the intention to purchase, if he does succeed, and the wish to be free to abandon the property at the end of his term, if his experiment should prove to be unsuccessful. It is a partially executed contract so far as he is concerned, for by taking the lease, he has paid for that right of purchase and, having secured it, may exercise it or abandon it at his pleasure. In *Stansbury* v. *Fringer*, 11, Gill. & John. 149, the court say: "When a contract consists of several distinct and separate stipulations on one side, and a legal consideration is stated on the other, it must be considered that the entire contract was in the contemplation of the parties in each particular stipulation, and formed one of the inducements therefor, and no one stipulation can be supposed to result from, or compensate for the consideration, or any portion of it, exclusive of other stipulations, unless the parties have expressly so declared."

In *Benedict* v. *Lynch*, 1 John Ch. 370 (7 Am. Dec. 484,) Chan-

cellor Kent said: "It has been ruled in several cases, *Armiger* v. *Clarke,* Bunb. Ill.; *Bromley* v. *Jeffries,* 2 Vern. 415, that a bill for specific performance will not be sustained, if the remedy be not mutual, or where one party only is bound by the agreement. This doctrine received a very clear illustration, and an explicit sanction in a late decision by Lord Redesdale, *Lawrenson* v. *Butler,* 1 Schoale & Lefroy 13. Though there are other cases in which an agreement has not been deemed within the statute of frauds, and specific performance has been decreed, when the contract was signed only by the party sought to be charged; *Seton* v. *Slade,* 7 Ves. 265; *Fowle* v. *Freeman,* 9 Ves. 351; yet the contrary opinion appears, from the most recent decisions, to be now prevailing; *Champion* v. *Plummer,* 5 Esp. N. P. 240; *Huddleston* v. *Briscoe,* 11 Ves. 592."

The peculiarity of contracts of this class, which makes them anomalous and sometimes difficult to construe, is the want of mutuality of remedy. The distinction, however, between want of mutuality of remedy and lack of mutuality in the contract must not be overlooked. The privilege of purchase is bought and paid for. The contract of purchase of the privilege, the option, not the contract of purchase of the land, is fully performed, by the optionee. It is executed on his side, and needs no remedy for its enforcement. It is executory and unperformed on the other side and may be enforced. Here again it is to be observed, in cases of this kind, the court does not, strictly speaking, enforce the option. What it really enforces performance of is a contract of sale that grows out of the option and to which the plaintiff has been able to bind the defendant by reason of the option. The defendant has made an offer which he cannot withdraw. The plaintiff accepts it by tender of the money. This makes a complete contract of sale, enforcible in equity. The defendant needs no remedy against the plaintiff because the offer is so drawn that the latter must perform or tender performance of every duty to be performed by him in the premises, before any contract of sale is affected. It comes to life by full antecedent performance of all requirements on the part of the plaintiff. This vests in him an equitable title. The defendant then, and not until then, becomes a trustee, holding the legal title for the use of the plaintiff. Equity is without power to give any aid until the parties are in this situation.

So, it is the contract of sale, growing out of the option, that is enforcible in equity.

Some decisions of reputable courts hold contracts like the one under consideration to be of the same class. Thus, *Ross* v. *Parks,* 93 Ala. 153, decides that, "A writing signed by the owner of a tract of land, promising to sell and convey to another on payment of a specified sum by a named day, and reciting the payment of a nominal sum as its consideration, is a valid contract, though not signed by the other party; and a court of equity will enforce it, at his instance, not only against the owner of the land, but also against a subsequent purchaser from him with notice; nor is it necessary to the maintenance of such bill that the complainant should be in possessioin of the land." That contract concluded with this clause, "We acknowledge the receipt of 50 cents on this contract, as an advance payment thereon; and should the balance herein agreed to be paid at the (time) agreed on, we hereby agree to accept said advance payment as a consideration for the cancellation and annulment of this contract, and said contract shall be so treated and held for naught." *Johnson* v. *Trippe,* 33 Fed. Rep. 530, enforces a similar contract. It gave the period of one year in which to purchase at the price of one thousand dollars, fifty dollars was paid on it, and it provided, that, if the balance should not be paid within the year, the contract, which the parties termed an option bond, should be null and void. In these two cases, the agreements were termed unilateral contracts, because there was a remedy on one side only. But there was no want of mutuality in the contract for the privilege of purchase. That was paid for just as in the case of a lease with privilege to purchase. In the first of these two cases, the consideration was only fifty cents, but it was held to be sufficient for the privilege. In the other, it was fifty dollars and the contract said that it should be forfeited in case of failure to complete. In both of the cases, the consideration might be said to have been inadequate, because the fifty cents in one was merely nominal, and it appears that, in the other case, the optionor was offered $1,500.00 for his land before the expiration of the year in which the optionee had the right to take it at one thousand dollars.

A peculiarity of these two conrtacts is that in no event could the optionor have any remedy against the optionee. He could

not sue within the time limited for performance, for all that time was accorded to the optionee in which to perform or not as he might elect. The contract provided that, upon the expiration of that time, it should be null and void, so that neither party could then have any remedy against the other. That is one of the peculiarities of the contract in this case. There was no time when Kittle could sue Howell. He could not sue within the five years nor after the expiration of that period. However, there is mutuality in the contract for a consideration has been paid, although it is insignificant in amount. In *Guyer* v. *Warren,* 175 Ill. 328, upon a contract somewhat similar, in which the consideration was one dollar for the privilege of purchase within about a year with a stipulation that by the payment of fifty dollars, on or before the expiration of that time, it should be extended for another year, which sum was paid, and the option thus kept alive, the court said the rule requiring mutuality has no application to an option contract like the one here under consideration. There is here an optional sale upon a fair consideration. The consideration named in the written agreement is one dollar. As the parties agree to sell an option to buy for the sum of one dollar, there is no reason why such an expression or consideration is not an adequate one. No reference is made to the cash payment of fifty dollars for the extension of time.

A case involving a question somewhat similar to the case last above mentioned is *Lowther Oil Co.* v. *Guffey,* 52 W. Va. 88, in which an oil lease was given upon a recited consideration of one dollar, providing that, in the event of failure to complete a well within two years, the grant should become void unless kept alive by the payment of an annual rent. JUDGE DENT, speaking for the Court, said: "While one dollar is a small consideration, yet it is a valuable consideration and the Court cannot say that it was inadequate under the circumstances, as the lessors did not consider it so. It was only intended to hold the grant for two years, and after that time a further consideration to prevent forfeiture was provided. During the two years, the lessors did not object to the inadequacy of the consideration and it is too late to do so now." For this, he cites certain similar cases, as will be seen by reference to the opinion.

Courts of law, as a rule, will not enter upon any inquiry as

to the adequacy of a considertaion in a contract. They presume this to have been determined by the parties to the contract, if they are capable of contracting. *Duffy* v. *Shockey*, 71 Am. Dec. 348; *Bell* v. *Hewitt*, 24 Ind. 282; *Hind* v. *Holdship*, 26 Am. Dec. 107; *Woolfolk* v. *Blount*, 9 Am. Dec. 736. "A different rule would, in every case, impose upon the court the necessity of enquiring into, and of determining the value of the property received by the party giving the promise. Such a course is obviously impracticable. In all cases, therefore, where the *assumption* or undertaking is founded upon the sale or exchange of merchandise or property, or upon other *than a money consideration,* and the promise had been deliberately made, the law looks no further than to see that the obligation rests upon a consideration, that is, one recognized as legal, and of *some* value. But the reason of the rule ceases, and, hence, the rule ceases, when applied to contracts to pay money and founded solely upon a *money* consideration." *Shepard* v. *Rhodes,* 7 R. I. 470. After noting some apparent exceptions to this rule, the court proceeds as follows: "Aside from these and some other exceptions, at common law, a contract for the exchange of *unequal* sums of money at the same time, or at different times, when the element of time is no equivalent, is not binding; and, in such cases, courts may and do enquire into the *equality* of the contract; for its subject matter, upon both sides, has not only a fixed value, but is itself the standard of all values; and so, for the difference of value, there is no consideration." Courts of equity, however, will refuse to enforce the specific performance of contracts because of inadequacy of the consideration, for the exercise of the power to compel specific performance rests in the sound discretion of the court; but in the case of a contract for the sale of land the inadequacy, to stay the hand of the court, must be so gross as to be evidence of fraud. *Seymour* v. *Delancy,* 3 Cow. (N. Y.) 445, (15 Am. Dec. 270). A note to this case, in 15 Am. Dec. citing a large number of authorities, says that the rule as settled by Lord Eldon and Sir William Grant is "That inadequacy of consideration is no ground for refusing to enforce a contract specifically unless it is so gross as to amount to conclusive or, at least, satisfactory evidence of fraud, or unless accompanied by other circumstances going to show fraud." Whether, under this

rule, a court ought to refuse specific performance of an optional contract of sale for five years, based upon a consideration of one dollar, by which a man deprives himself of the power to dispose of his land for so long a time, is a question we are not called upon to decide, for the reason that another principle of law, applicable to contracts of this kind, effecutally precludes the granting of the relief sought.

A contract of this kind is in no sense a sale of the land, and vests no equitable title in the optionee. It amounts, at the most, to an irrevocable privilege of purchase. It is unlike an accepted offer of sale which constitutes a contract of sale, giving mutuality of remedy to both parties, by which either may enforce the specific performance of it. "An option contract to purchase is but a continuing offer to sell, and conveys no interest in the property." *Caldwell* v. *Frazier,* 68 Pac. Rep. 1076. This was the case of a lease with an option of purchase, which, as above shown, is in all respects, similar to the contract involved here. Between the offer and acceptance, the improvements on the property were destroyed by fire and the plaintiff sought performance of the contract, with the improvements restored or with an abatement in price equal to the value of the lost improvements. The court held that he had no interest in the property at the time of the fire, and, having accepted the contract after the loss, he must pay the full price. Upon a similar contract in *Gilbert* v. *Park,* 28 O. St. 276, the court held that the optionee had no title to the land. There was a loss by fire of property on the premises covered by insurance. After the loss, the optionee made his election to take the property and endeavored to hold the insurance money, but was not permitted to do so. A similar case is that of *Edwards* v. *Vest,* 7 Ch. Div. 858. The court held as follows: "Under the terms of a lease the landlord covenanted to insure, and the tenant had the option to purchase for a fixed sum. Before the time for exercising the option, the buildings demised were burnt, and the landlord received the insurance money. The tenant then exercised his option to purchase, and claimed the insurance money as part of his purchase: *Held,* that, under the circumstances, the tenant had no claim to the insurance money."

Although based upon a consideration, it is but an offer, a privilege extended, differing from an ordinary offer only in this,

that it is not revocable, because based upon a valuable consideration. An assignment of it, therefore, passes no interest in the property to which it relates. Hence, Howell's assignment to Rease could carry nothing except the continuing offer of purchase. That, he had no right to pass to another. The offer was limited to him, it was not made to the world at large, nor does the contract say it was made to J. E. Howell and his assigns. Whether if it did, he might turn it over to another, there is no occasion to say. The offer is personal to him. As this is coal land, it may be said that it is immaterial to whom the sale is made and that the reasons for limiting an offer to sell to a particular person in the case of property near, or adjacent to, a man's residence or to the residence of a relative, a friend or a neighbor, do not apply. But there is no rule countenancing any such exception. The authorities say that an offer made to a particular person can be turned into a contract by him alone. "When an offer is made to a particular person, it can be accepted by him alone and is not assignable to another." 9 Cyc. 255. In *Newton* v. *Newton,* 11 R. I. 390, (23 Am. Rep. 476), the court held as follows: "Defendant gave J. S. a bond conditioned that J. S. might, at his own option, within a certain time, purchase certain real estate belonging to defendant upon paying a sum named. J. S. dying before the expiration of the time without having availed himself of the option. *Held,* that the option was neither a. chose in action nor a transmissible right of property, but a personal privilege in J. S., and that upon his death the bond lapsed.·

This accords with a general principle of the law of contracts. "A party has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. It may be of importance to him who performs the contract, as when he contracts with another to paint a picture, or write a book, or furnish articles of a particular kind, or when he relies upon the character or qualities of an individual, or has, as in this case, *reasons why he does not wish to deal with a particular party."* *Boston Ice Co.* v. *Potter,* 123 Mass. 28, (25 Am. Rep. 9). The nature of that contract will appear from the head note of the case which reads as follows: "A, who had purchased ice from B. under a contract, becoming

dissatisfied, terminated that contract and made a new contract
for ice with C. B. afterwards bought's C.'s business and deliv-
ered ice to A, who had no notice or knowledge of the purchase
until after the ice was delivered and used. *Held,* that B. could
not recover for the ice from A." In *Wilder* v. *Wheeler,* 60 N.
H. 351, the defendant had, in consideration of one dollar and
an annual rent of six dollars, granted to a cotton factory the
right to lay down an aqueduct upon his land and draw water
therefrom for the use of the factory, and the court held that
he did not thereby have an assignable interest, as the contract
used no words of inheritance and it could not be inferred from
the language of the whole deed that there was any intent of the
parties that the right should be assignable. The company, after
making the connection and using water for a long time, con-
veyed its buildings to a third party who subsequently conveyed
to the plaintiff. In *Pearson* v. *Hartman,* 100 Pa. St. 84, the
owner of a lot of ground conveyed it to trustees to be used as a
graveyard, reserving the right to and for himself and every
member of his family or other offspring, to mark off within
the lot one square perch of ground, wherever they might think
proper, for their own and separate use forever for the burial
of the dead, and the court held that the privilege thus reserved
was personal to the grantor and his family and was incapable
of assignment to a stranger.

Reliance is placed upon an alleged payment by Howell of
$90.00 to Kittle on account of the purchase money, in 1896,
and verbal acceptance of the option by Howell, prior to the
sale to Womelsdorff. As to the payment, Howell says he took
up two notes for him, and let him have hay enough to make the
total of $90.00, and it was agreed between them that this sum
should be treated as part payment for the land. But Howell
admits that he took Kittle's note for that money, and having
lost the note, had brought an action before a justice to recover
said sum of $90.00, which was still pending on appeal at the
time his deposition was taken. He endeavors to explain away
this inconsistency by saying Kittle had refused to admit the
credit without production of the lost note, and that the suit
was brought to establish the right to credit for said sum. This
again is inconsistent, for no action can be maintained for money
which the plaintiff admits has been paid to the defendant on

account of a debt or contract, unless in the latter case, he proceeds upon the basis of a rescission. If such part payment accepted by the optionor would convert the contract into one of sale, this evidence cannot be regarded as establishing such payment. Its inconsistencies condemn it. Substantial rights cannot be taken away in such manner. If Howell's conduct does not overthrow his statements, it weighs fully as much as they do, and the burden is on him.

For the reasons given, the decree complained of must be reversed, the demurrer sustained, the bill dismissed, and the appellee must pay to the appellant his costs about his defense expended in the court below as well as his costs in this Court.

*Reversed.*