WHEELING CREEK GAS COAL & COKE CO. v. ELDER et al.

SAME v. CROW et al. (two cases).

(Circuit Court, N. D. West Virginia. May 3, 1909.)

1. Removal of Causes (§ 52*)—Separable Controversy—Suit for Specific Performance.

In a suit by a purchaser to enforce specific performance of a contract for the sale of land against the vendor and a grantee to whom he conveyed the land subsequent to the contract with complainant, but before it was recorded, there is a separate controversy with such grantee involving his right to hold the land as against the complainant, which gives

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

him the right to remove the cause where he is a nonresident and the requisite amount is involved.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 102, 103, 105; Dec. Dig. § 52.*

Separable controversy, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

2. VENDOR AND PURCHASER (§§ 3, 57*)—CONSTRUCTION OF CONTRACT—SALE OR OPTION.

A writing signed by the owner of land only, by which he agreed to convey a vein of coal thereunder at a certain price per acre to be paid by a time stated, otherwise the agreement to be considered rescinded, and for which no consideration was paid, is not a contract of sale but merely an option, or a continuing offer to sell, subject to withdrawal at any time before acceptance, and to be strictly construed, and of which, if accepted, time is of the essence.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 3, 87; Dec. Dig. §§ 3, 57.*]

3. VENDOR AND PURCHASER (§ 214*)—OPTION CONTRACT—ASSIGNABILITY.

An option or offer to sell land given to a person, "his heirs and assigns," is assignable by him, but is not reassignable by the assignee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 443; Dec. Dig. § 214.*]

4. SPECIFIC PERFORMANCE (§ 17*)—CONTRACTS ENFORCEABLE—MUTUALITY—OPTIONS.

To entitle an assignee of a contract giving his assignor an option to purchase real estate to enforce specific performance of the same, the offer must have been accepted within the time limited therein, and he must have succeeded to the entire interest of the assignor and be in such position that specific performance could be enforced against him.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 39½; Dec. Dig. § 17.*]

5. SPECIFIC PERFORMANCE (§ 17*)—OPTION TO PURCHASE REAL ESTATE—RIGHT OF ASSIGNEE.

Defendants, without any consideration paid, gave written options to purchase a vein of coal under their lands until a stated time to a person and his heir and assigns. Before the options expired he assigned the same to two individuals jointly, one of whom, signing himself as treasurer of a coal company, served notices on defendants that "we, the undersigned," accepted the offers, and made to each a small payment, for which he took a receipt running to him as such treasurer. At that time there was no such company in legal existence, but long after the option had expired a corporation by that name was organized, to which the assignees assigned the contracts and which thereafter demanded performance. Held, that such corporation acquired no rights which entitled it to enforce specific performance, because, first, there was no attempted acceptance by the assignees nor by any one against whom defendants could have enforced such performance, and, second, the assignees had no right which they could assign.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 39½; Dec. Dig. § 17.*]

6. LIS PENDENS (§ 11*)—BONA FIDE PURCHASER—PROTECTION AGAINST PRIOR CONTRACT OF SALE.

Under the law of West Virginia as established by statute and decision, an appeal from a circuit court to the Supreme Court of Appeals is the beginning of a new, and not a continuation of the old, suit, and one who, after final decree of a circuit court dismissing a bill for specific performance of a contract to sell land and before an appeal is taken, purchases the property in good faith, will be protected in such purchase although

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an appeal is afterward taken on which the decree is reversed, and the fact that he had knowledge of the suit or even covenanted to protect the vendor against loss or damage by reason thereof is immaterial.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. § 30; Dec. Dig. § 11.*]

## In Equity.   On demurrers to amended bills.

In August, 1899, Staggers procured from the farm owners contracts touching about 1,500 acres of the Pittsburg or River seam of coal with mining rights in Marshall county, W. Va. In these writings the same form was used in all, and they are practically identical, except as to names and descriptions of the lands. The material part of them is that the landowners "agree to sell and convey to H. C. Staggers, party of the second part, his heirs and assigns, all the coal of Pittsburg or River vein" in and under the lands set forth and described, "with the right to mine and remove all and every part of the same" under conditions prescribed, "for which the party of the second part, heirs or assigns, shall pay six dollars per acre, * * * one-third when deed is signed, sealed and delivered, the remainder in two equal annual installments thereafter." It is further provided, "a general warranty deed, clear of all incumbrances, to be made to the said party of the second part, his heirs and assigns, when the first payment is made (party of the first part to furnish complete abstract of title) and others are secured by deed of trust mortgage on said property hereby sold. It is expressly understood and agreed that if the first payment aforesaid is not made on the 30th day of November, A. D. 1899, or as soon thereafter as the title shall be examined and accepted by the party of the second part, or his heirs or assigns, this agreement shall be considered as rescinded, and neither party shall be bound thereby." No consideration was paid at the time to the landowners for the execution of these writings, nor did Staggers himself sign them. On October 24, 1899, Staggers assigned all his right, title, and interest in these contracts to D. H. and S. H. Pearsall, having done nothing toward compliance with them. On November 22, 1899, "D. H. Pearsall, Treas. Wheeling Creek Gas Coal and Coke Company," served notices on the landowners that "we, the undersigned, hereby accept your offer for the sale of your coal underlying your farm * * * according to the options made to H. C. Staggers, on the date of August 17th, 1899, subject to examinations and approval of the titles thereto, with complete abstract of title." On the same day service of notice was accepted by, and a small sum varying from $5 to $20 was paid to, each landowner and a receipt taken as follows: "Received of D. H. Pearsall, Treasurer of the Wheeling Creek Gas Coal and Coke Company * * * as part purchase money on the within tract of coal." At May rules, 1901, the Wheeling Gas Coal & Coke Company filed its bills against a number of the landowners, one against each, but in each one the allegations are practically the same, setting forth the facts as above in detail, and alleging that "before the 30th day of November, 1899, the said D. H. and S. H. Pearsall proceed(ed) to accept the terms and conditions of said options, and notified the said * * * to prepare abstracts and deeds" for the coal; "that at the time of said notice the said D. H. Pearsall and S. H. Pearsall held the said options for and as agents of the plaintiff, the Wheeling Gas Coal & Coke Company, and the said notice and acceptance was in fact and in truth for the said Wheeling Creek Gas Coal & Coke Company. That a contract and understanding existed at that time by which the said options, contracts, and all matters pertaining to the sale of said Pittsburg or River vein of coal underlying the said tracts of lands were the property of the said Wheeling Creek Gas Coal & Coke Company. That on the 26th day of April, A. D. 1901, in accordance with a previous contract, the said options and contracts were duly assigned to the said plaintiff, by virtue of which said assignment this plaintiff became and is now fully substituted to all the rights and benefits under the said option and contract that the said H. C. Staggers and the said D. H. and S. H. Pearsall were entitled at any time." Refusal on the part of the landowner to comply with the contract, to accept the money, or execute the deed for the coal is

then charged and specific performance is prayed. As stated, both the facts and the pleadings are substantially the same in all the cases. Quotations have been made above from the pleadings in the first or Elder Case, and future references in this statement will be made from it. This original bill was remanded to rules, and a first amended bill was filed at September rules, 1901. This amended bill is almost in hæc verba that of the original one, except it makes the wife of the landowner a party defendant, charges the option to Staggers to have been made by the husband and wife, charges default and refusal in execution on both, and files copy of the assignment under date of April 26, 1901, of the Pearsalls to the plaintiff company, a corporation under the laws of West Virginia.

To this bill written demurrer was filed by the landowner, alleging the bill to show on its face a noncompliance with the conditions of the option within the time required. That it appears from the face of the bill that plaintiff company had no interest in the contract prior to April 26, 1901, by which time the contract was forfeited and void. That a deed exhibited with the bill showed the Pearsalls had only an undivided eighth interest in the option, and the balance of interest belonged to persons not made parties. This demurrer was sustained by the state court, and a second amended bill was filed. This second amended bill alleges the plaintiff to be a corporation under the laws of the state of West Virginia, and, after repeating the allegations of the two first bills as to the option given Staggers and his assignment thereof to the Pearsalls, alleges that at the time of this assignment the Pearsalls had been commissioned by a number of persons named to purchase a suitable coal field, and that the assignment taken by the Pearsalls was for the benefit of themselves and these associates; that on November 7, 1899, the Pearsalls and their associates met and ratified the taking of the assignment of the option, organized themselves into a company or association by the name of the Wheeling Creek Gas Coal & Coke Company, agreed to be incorporated under this name and to act under this name until incorporated; that at this meeting S. H. Pearsall was elected president, D. H. Pearsall treasurer, and T. H. Patton secretary, and the affairs of such association were conducted by such officers until the company was incorporated on January 9, 1901, whereupon on April 26, 1901, the Pearsalls assigned to it the options. It is further alleged that the association and the landowner agreed at the time the notice was accepted and the small sum was paid that the association and landowner would join together with other interested owners in employing an attorney to make abstracts of titles and prepare deeds, and did employ attorneys for this purpose; that no further payment of purchase money was to be required until these abstracts were made; that defects in title were found and corrected, but when the company sought to pay the money and perform the contract the landowner refused on his part to comply. Specific performance is again prayed. To this second amended bill written demurrer was entered based on the same grounds as the former one, and, in addition thereto, alleging the notice served on the defendants not to be in accordance with the option, and that acceptance of the option was made upon condition the defendants surveyed the lands, a condition not required by the contracts; that the bill seeks to set up verbal contracts, indefinite and uncertain, relating to the sale of real estate, and therefore void under the statute of frauds. On April 18, 1902, the circuit court of Marshall county sustained this demurrer to the second amended bill, and, the plaintiff not seeking further to amend, dismissed the several causes with costs. No suspension of these decrees was asked for, but an appeal was subsequently taken to the Supreme Court of Appeals of the state in the Elder Case, and the decree in that case, by that court, was on December 5, 1903, reversed, the demurrer to the second amended bill was overruled, and the cause remanded with direction to require further amendment by making Staggers, the Pearsalls, and their associates parties. After the final decrees dismissing the bills in the lower court and before appeal taken, the landowners sold and by deeds conveyed their coal to the defendant Josiah V. Thompson and 13 others. These deeds were duly admitted to record. These conveyances were made on July 11, 1902, and it was not until October 7, 1902, that the appeal was taken in the Elder Case. As stated, no appeal in the other cases was taken to the decrees of April 18, 1902, dismissing the causes, but after

the reversal in the Elder Case on February 12, 1904, an order was entered in each, by consent, setting aside such final decrees and overruling the demurrers in each to the bills.

On March 26, 1904, the plaintiff filed its third amended bill against the original landowners and wives, Staggers, the Pearsalls and their associates, and the defendant Josiah V. Thompson and his 13 associates reiterating in great detail the allegations and statement of facts set forth in its former bills, the sale to Thompson and associates, and praying that the landowners be required to specifically perform the option contracts, and to this end that their deeds to Thompson and associates be set aside and canceled.

Thompson and associates on April 9, 1904, filed their petition, as nonresidents of the state and claiming a separable controversy, for removal to this court, and by regular order entered by the circuit court of Marshall county all three of the causes have been so removed. In this court the defendants Thompson and associates have filed in each case their combined demurrer and joint answer, in which they rely upon the grounds of demurrer theretofore relied upon in the state court, and for answer deny many of the allegations of the bill, and set up and rely upon their purchase of the coal and the conveyance thereof to them after the final decree by the state circuit court and before appeal therefrom was taken.

J. B. Sommerville, for plaintiff.
Wm. H. Hearne and Riley & Ritz, for defendants.

DAYTON, District Judge (after stating the facts as above). Were these causes properly removable to this court? I think so. The facts are very similar to those involved in Elkins v. Howell (C. C.) 140 Fed. 157, where, after careful consideration of the question, I held that:

"In a suit by a purchaser to enforce specific performance of a contract for the sale of lands against the vendor and grantees, to whom he conveyed the land subsequent to the contract with complainant, but before it was recorded, there is a separate controversy with such grantees, involving their right to hold the land as against the complainant, which gives them the right to remove the cause, where they are nonresidents and the requisite amount is involved."

This being so, and the causes being properly here for determination, I think it necessary at the outset to determine the character and scope of the original contract entered into between Staggers and the landowner—whether it be a contract of sale conditional, or an option to buy only—for the principles to govern in each contingency are materially different. In attempting to determine this, I am confronted with a direct conflict of authority, either one of which, in the absence of the other, would be binding upon me in the premises. The Supreme Court of Appeals of this state in the appeal in the Elder Case (Gas Co. v. Elder. 54 W. Va. 335, 46 S. E. 357) has construed this contract, the notice and acceptance, "not as options, but as actual sale, and the presence of a subsequent condition of defeasance does not make them options or any the less contracts of sale. Monongah v. Fleming, 42 W. Va. 538, 26 S. E. 201. Viewed as such, no acceptance was necessary." On the other hand, the Circuit Court of Appeals for this Fourth Circuit in Standiford v. Thompson, 135 Fed. 991. 68 C. C. A. 425, in construing a contract arising in the same neighborhood, doubtless using the same printed form and in the exact words, except names, dates, and descriptions, has held it to be only

an option, in which time would be held to be of the essence and strict compliance would be required. The Elder Case was decided by the state court in December, 1903; the Standiford Case by the federal court in February, 1905. I have determined to adopt the construction held in the Standiford Case, for four reasons: First, because I regard it as paramount in its binding force upon me as a subordinate federal judge; second, because it is the latest decision of the matter; third, because my personal judgment is in entire accord with the reasoning of Judge Brawley, and in distinct opposition to that of Judge Brannon as set forth in their respective opinions; and, fourth, because I further think the Supreme Court of Appeals in cases subsequent to the Elder One have in principle overruled it. In the Elder Case Staggers is held to have secured by this paper an estate by purchase in these coal lands, notwithstanding he never signed it, never paid a copper consideration for it, never attempted personally to comply with it in any single particular, never recorded it, and assigned it for a consideration of $1. By its express terms it lacked mutuality. The landowner had no right under it to enforce specific performance against him; it was wholly dependent upon his own will and pleasure whether he would comply or not, and he was given by its terms from August until the last day of November to make up his mind. In a more recent case, that of Rease v. Kittle, 56 W. Va. 269, 49 S. E. 150, where a much stronger contract of like character—stronger in that a valuable consideration for it is acknowledged in it—it is held:

"A contract in writing by which one party, for a valuable consideration, agrees to sell and convey to the other a tract of land for a specified price within a certain time thereafter, the whole amount of the purchase money to be paid in cash within such time, and, on failure to take and pay for the land within the time stipulated, the contract to be void, is a continuing offer to sell, and not revocable within the time limited."

And in Tibbs v. Zirkle, 55 W. Va. 49, 46 S. E. 701, 104 Am. St. Rep. 977, also decided since the Elder Case, it is held:

"An option given for a valuable money consideration cannot be revoked until the time limit therein has expired. If such option is without consideration, it may be withdrawn or revoked at any time before acceptance."

In considering the contract involved in Rease v. Kittle, supra, where Howell, in consideration of $1 paid, was to have the right to purchase Kittle's land at a fixed price per acre, and in case Howell failed to pay the balance of purchase money before the expiration of five years from date, then the contract to be void, Poffenbarger, J., says:

"A peculiarity of these two contracts is that in no event could the optionor have any remedy against the optionee. He could not sue within the time limited for performance, for all that time was accorded to the optionee in which to perform or not as he might elect. The contract provided that, upon the expiration of that time, it should be null and void, so that neither party could then have any remedy against the other. That is one of the peculiarities of the contract in this case. There was no time when Kittle could sue Howell. He could not sue within the five years nor after the expiration of that period. However, there is mutuality in the contract, for a consideration has been paid, although it is insignificant in amount," and because of the payment of the dollar consideration, and it alone, conclusions are reached that, while the contract is enforceable "before payment or tender of the purchase money within the time stipulated, such contract does not vest in the person to whom the

offer of sale is made any title to the land, either legal or equitable, and his assignment of his rights under the contract passes no title to the assignee."

How can such rulings be reconciled with those maintained before time in the Elder Case, by the same court, where the contract did not have the dollar consideration to stand upon? In this more recent case the decision in the Elder one is in no way sought to be distinguished; it is not referred to. The conclusion is inevitable that, by this common but unfortunate method of ignoring cases in which the same court has found itself on the wrong track, it avoided the embarrassment of direct acknowledgment of the fact.

These latter rulings of the Supreme Court of Appeals of West Virginia are, in my judgment, in full accord with the clear and irrefutable reasoning of Judge Brawley in Standiford v. Thompson, supra, whereby this contract is held to not be a contract of sale of the coal land upon a condition subsequent, vesting a title in the land at once in the purchaser, subject to be defeated on the nonpayment of the money upon the day specified, but an option, "an unaccepted offer to sell," without consideration, and therefore, under the rulings in Rease v. Kittle and Tibbs v. Zirkle, subject to withdrawal at any time before acceptance. If not withdrawn and acceptance of and compliance with it is undertaken, time becomes of the essence, and the compliance must be strictly in accord with its terms and conditions.

If it be made to the optionor alone, it is not subject of assignment, as held in Rease v. Kittle, supra. If to the optionor, "his heirs or assigns," it is subject of assignment, but an assignee can occupy no better position thereby than that of the original optionor. Such assignee must be entitled in his own right to the whole of the option contract, not a part of it. He must be in a position to be required to specifically perform after acceptance, as well as to require specific performance on his part. Such assignee must be a legal entity at the time, either as person, partnership, or corporation. As well said, too, by Judge Brawley in the Standiford Case:

"If the subject of the contract is one likely to be of greater or less value, according to the effluxion of time, and a definite time is fixed therein for its performance, there is a necessary implication that time was the essence of the contract relating to it. As said by the court in Waterman v. Banks, 144 U. S. 403, 12 Sup. Ct. 646, 36 L. Ed. 479: 'This principle is peculiarly applicable where the property is of such character that it will likely undergo sudden, frequent, or great fluctuations in value. In respect to mineral property, it has been said that it requires, and of all properties, perhaps, the most requires, the parties interested in it to be vigilant and active in asserting their rights.'"

Viewed in the light of these principles, it is clear that this writing to Staggers was an offer to sell to him this coal land until November 30, 1899, unless withdrawn before that time by the landowner; that, being given to him "and his assigns," he could transfer his right, such as it was, to an assignee; that he did assign such right to D. H. and S. H. Pearsall jointly, who did not, holding such right, attempt to accept the offer as such assignees within the time limit, but "D. H. Pearsall, Treas. Wheeling Creek Gas Coal and Coke Company," did eight days before its expiration, attempt to accept such offer; that such Wheeling Creek Gas Coal & Coke Company at that

time had no existence either as a person, firm, or corporation, and no assignment to it at the time could have been legally made by the Pearsalls, if it had had entity, because the assignment of Staggers of it to them was to them alone, and not to them "and their assigns." They alone as individuals could accept the offer under the ruling in Rease v. Kittle. They made no attempt to accept it. The attempted acceptance of it on behalf of the Wheeling Creek Gas Coal & Coke Company was wholly abortive, because, first, it had no right to accept, having no assignment until April 26, 1901, after its incorporation; and, second, the Pearsalls had no right to assign the offer to it or any one else under the terms of the assignment under which they held. But it is said the Pearsalls were acting for and on behalf of an association of individuals at the time known as the "Wheeling Creek Gas Coal & Coke Company," who had agreed to purchase this coal. No such agreement in writing is shown, and in my judgment the allegations of the bill clearly show that no such agency existed whereby these Pearsalls could have bound the individual members of this "association" in a purchase of this realty from the landowner in a way to defeat the statute of frauds. At most, as shown by the subsequent act of incorporation, these individuals had agreed to take stock in the corporation to be chartered in futuro.

But if all this were not true, there is another reason why these bills cannot be maintained. Final decrees, dismissing these causes, were entered on April 18, 1902. On July 11, 1902, Thompson and his associates purchased these coal lands from these landowners, paying a cash consideration, incidentally twice as large as that provided to be paid them under the Staggers option. Not until October 7, 1902, was an appeal taken in the Elder Case. No stay to these final decrees was asked or given. They were final in the full sense of the word, at least from April to October, during which time Thompson and his associates purchased, paid for, and took and recorded deeds to the lands. The Supreme Court of West Virginia in Wingfield v. Neall, Trustee, 60 W. Va. 106, 54 S. E. 47, 10 L. R. A. (N. S.) 443, 116 Am. St. Rep. 882, has held that the rule of "the civil law and equity jurisprudence that the object of an appeal was to take the whole case to the higher tribunal, there to be tried and determined de novo upon the issues between the parties, as though the cause had originated in the appellate court," has been abrogated by statute in this state, and now an appeal from the circuit to the supreme court of appeals is the beginning of a new, and not a continuation of an old, suit. Therefore "one who, after final decree and termination of the suit, and before an appeal is obtained, purchases, in good faith, property which is the subject of the litigation, will be protected in such purchase." This establishes a rule of property in this state by its court of last resort, and therefore should be followed by the federal courts. The fact that in the deeds taken by Thompson and his associates there is charged to be an agreement that they would "assume the conduct, management and result of a suit of Wheeling Creek Coal & Coke Company against first party (landowner) in the circuit court of Marshall county, and to indemnify and save harmless the first party from any loss or damage in case said suit may be decided against them,"

does not affect the force of this decision in this case. In the Wingfield Case it was charged the purchaser between final decree and appeal had notice of the litigation, but such knowledge was held immaterial. Here such covenant possibly should be held mere surplusage, for the suit in the circuit court of Marshall county was at the time ended. At most it can be construed only as an agreement to indemnify the landowner in any action at law brought by the company against him for breach of his contract. It cannot affect the title of Thompson and his associates to the coal land, or authorize the cancellation of their deed therefor as prayed for. Nor does the fact that after the reversal of the final decree in the Elder Case the then parties to the other causes consented to the entry of orders therein whereby these final decrees were "set aside and held for naught" change the situation as to Thompson and his associates in regard to the coal lands involved in these causes. This for the simple reason that these consent decrees were not entered until February, 1904, nearly two years after they had purchased, taken, and recorded deeds, during which time the final decrees were in force. These consent orders setting aside these final decrees were made, so far as appears, without their knowledge, and certainly when they were not parties and therefore in no way bound thereby.

Specific performance is not a matter of right, but is one of sound discretion, controlled by established principles of equity, and will be granted or withheld by the court upon consideration of all the circumstances of each particular case. 7 Words & Phrases, 6605.

These cases seem to me to be very clear ones where such discretion should not be exercised, and the causes must be dismissed, with costs.