# CHARLESTON.

## PARDEE et al v. CAMDEN LUMBER COMPANY.

Submitted March 29, 1910.   Decided December 5, 1911.

1. INJUNCTION—*Injury to Growing Timber—Adequate Remedy at Law.*

   As growing timber is °part and parcel of the land on which it stands, wrongful destruction thereof is an injury to the land itself, not adequately remediable by an action at law.   (p. 69).

2. SAME—*Protection of Owner of Standing Timber.*

   An owner of land with standing timber thereon has a legal right, not sustained by legal remedies, to keep the timber in its natural state until such time as he may see fit to alter its character and incidents by severance, wherefore equity, upon a proper application therefor, will interpose its remedies for protection thereof.   (p. 75).

3. SAME—*Cutting Standing Timber—Pleading.*

   To obtain an injunction to prevent such a trespass it is not necessary to allege the insolvency of the trespasser nor any other circumstance, rendering an action at law futile or unavailing as a remedy for the injury.   (p. 75).

4. SAME—*Cutting Timber.*

   When the title to land is in dispute, and an action of ejectment has been, or is about to be, instituted by the claimant out of possession, he may enjoin the other from cutting timber on the land, pending the determination of the question of title in the law court.   (p. 75).

5. SAME—*Dissolution.*

   In such case, a verdict for the defendant in the law action, not carried into judgment, does not justify dissolution of the injunction.   (p. 75).

6. CONFLICTING DECISIONS.

   In so far as they conflict with the principles here declared, the following decisions and others of their class are disapproved and overruled:   *Marcum* v. *Marcum*, 57 W. Va. 285; *Curtin* v. *Stout,* 57 W. Va. 271; *Stephenson* v. *Burdette*, 56 W. Va. 110; *Burns* v. *Mearns*, 47 W. Va. 744; *Cresap* v. *Kemble*, 26 W. Va. 603; *Schoonover* v. *Bright,* 24 W. Va. 698; *Cox* v. *Douglass*, 20 W. Va. 175; *Western M. & M. Co.* v. *Cannel Coal Co.*, 10 W. Va. 250; *McMillan* v. *Ferrell*, 7 W. Va. 223.   (p. 75).

Appeal from Circuit Court, Webster County.

Bill by Barton Pardee and others against the Camden Lumber Company and others. Decree for defendants and plaintiffs appeal.

*Reversed and Remanded.*

*Haymond & Fox* and *Morton & Wooddell,* for appellants.

*W. S. Wyson, Linn & Byrne,* and *B. P. Hall,* for appellees.

Poffenbarger, Judge:

This appeal from an order dissolving an injunction awarded to prevent the cutting of timber on a tract of land, the title to which is in dispute, pending an action of ejectment to determine the title, would necessarily and inevitably fail under a rule or principle often declared by this Court, if we should adhere to it. Unless the trespass itself constitutes irreparable injury none is shown, for there is no allegation of insolvency of the trespasser nor of any other circumstance, precluding recovery of such compensation in money as the law gives, for the injury done and threatened, by an action.

In 1874, in the case of *McMillan* v. *Ferrell,* 7 W. Va. 223, this Court prescribed, as being essential and indispensable to a bill to prevent the cutting of timber, averments of good title in the plaintiff, trespass by the defendant and the insolvency of the latter or some other circumstance, rendering an action for damages futile or unavailing, and that doctrine has been uniformly maintained ever since. *Curtin* v. *Stout,* 57 W. Va. 271; *Marcum* v. *Marcum,* 57 W. Va. 285; *Stephenson* v. *Burdett,* 56 W. Va. 110; *Burns* v. *Mearns,* 47 W. Va. 744; *Cresap* v. *Kemble,* 26 W. Va. 603; *Schoonover* v. *Bright,* 24 W. Va. 698.

However, this rule seems not to have commanded uniform approval by the public, nor by the members of the legal profession, and, in later years, under conditions greatly enhancing the value of timber and altering, to a considerable extent, the method of handling it, the dissatisfaction has grown in extent and intensified in degree. Out of the great disfavor into which the rule has thus fallen, an insistent demand for its abolition has brought forth earnest, able and laborious inquiry as to the soundness of the reasoning upon which it was established,

resulting in increased dissatisfaction, which has extended even to members of this Court, as will appear from official expressions of personal disapproval of the doctrine or principle of the line of decisions just mentioned.

Under these circumstances, we feel it our duty to re-examine the proposition and thoroughly test its soundness by the application of legal and equitable principles. The chief restraint or limitation upon the overruling of decisions is the inexpediency and injustice of disturbing property rights. Hence, it has been said that a line of decisions enunciating a principle which has become a rule of property, or under which property rights have vested by reason of its observance and adoption in contracts, will not be overruled. Here, there is no such limitation. To abolish the rule or principle under consideration neither destroys nor impairs any property right or incident. On the contrary, the abolition thereof will conserve and protect such rights and incidents, for no man can be said to have a property right in that which amounts to a trespass against his neighbor or a stranger. The effect will be to give the admitted and acknowledged property owner a more complete remedy for the vindication of his property rights. We regard the rule as one pertaining to remedy only as regards the trespasser who is the sole beneficiary thereof. Hence, if the application of the test above mentioned shall disclose its unsoundness we shall feel entirely free to abrogate it. Having created or ordained it, this Court may consistently discard it, without injury to any person and to the great relief of property owners.

Supposed inadequacy of the legal remedy for the cutting of timber, regarded as a mere trespass upon land, constitutes the basis of the rule. If the legal remedy is not adequate, the whole doctrine necessarily fails. Whether it is, must be determined by reference to the general policy of the law as disclosed by its application in analagous and related cases. In other words, we must see to what extent the remedies afforded by courts of law and equity protect and vindicate the right of an owner of property to keep it in such condition as he desires. If we find the general object to be the maintenance of this right, respecting all other kinds of property, we must necessarily say it ought to extend to the right of an owner of timber to allow it to stand upon his land in its natural state as long as he desires it to

do so. Timber cut down and converted into mere logs and
lumber is plainly not the same thing as standing timber. It
is equally manifest that the legal remedies are wholly in-
adequate to re-convert logs and lumber into live, standing grow-
ing trees.   Our rule permits a mere trespasser . to utterly
destroy the forest of his neighbor, provided he is solvent and
able to respond in damages to the extent of the value thereof.
It can neither restore the forest, nor prevent its destruction
It allows the property to be wholly altered in nature and
character or converts it into a mere claim for damages.   After
the timber has been cut, the owner may recover possession there-
of by an action of detinue, or, waiving that, may recover its
value, but this does not, in either case, restore the property to
its former state, nor replace it by the return of an equivalent.
The general principles of English and American jurisprudence
forbid such a result.   They guarantee to the owner of property
the right not only to the possession thereof and dominion over it,
but also its immunity from injury, unless it be of such character
that it may be substantially replaced.   On the theory of
adequacy of the legal remedy, an injunction to prevent the
sale or destruction of certain kinds of personal property will
be refused, but the principles upon which this conclusion stand
cannot be extended to all forms of property either real or
personal, and the courts do not attempt so to extend it.   Com-
pensation in damages is adequate in all those instances in which
the property injured or destroyed may be substantially re-
placed with the money recovered as its value.   For instance,
the world is full of horses, cattle, sheep, hogs, lumber and many
other articles.   Ordinarily, one of these may be re-placed by
another just as good.   This principle is applied in a proceeding
for specific performance of contracts for the sale of corporate
stocks.   If the stock belongs to a class found generally in the
market for sale, equity refuses specific performance of the
contract, because other stock of the same kind can be purchased
with the money recovered as damages.   If, on the other hand,
the stock is limited and unobtainable in the market, specific
performance will be enforced.   Similarly, as no two pieces of
land can be regarded as equivalent in value and character
in all respects, equity will always enforce specific performance
of a valid contract for the sale thereof.   If personal property

possesses a value peculiar to its owner, or, as it is generally expressed, has a *pretium affectionis,* equity will vindicate and uphold the right to the possession thereof and immunity from injury, by the exercise of its extraordinary powers. We observe also that the law gives a remedy for the possession of personal property, however trivial its value or character may be. It does not limit the owner to a claim for damage, unless the property has gone beyond the reach of its process. As equity follows the law, and, as far as possible, supplies omissions therein, so far as may be necessary to the effectuation of substantial justice, it vindicates the right of an owner to enjoy his property without injury or molestation by the exercise of its preventive powers; but, harmonizing with the great Divine rule of help to those who help themselves, equity goes no further than is necessary. Therefore, if a man threatens to take away or kill his neighbor's horse a court of equity will not interfere by injunction, because the owner may recover the value of that horse and buy another in the general market of substantially the same kind or value. For the same reason, it refuses to enforce specific performance of a contract of sale of a horse. But, if a man is about to destroy his neighbor's heirlooms, things having a peculiar value and insusceptible of re-placement by purchase in the market, the legal remedy is not adequate and a court of equity will, therefore, protect the possession and title of the owner by the exercise of its extraordinary power. Again, the owner of a fund, misappropriated or diverted by a trustee or other custodian thereof, or the owner of a fund representing the proceeds of property wrongfully taken from him, may in equity follow that fund up and charge the amount thereof upon property into which it has been invested, even though he has a right of action at law against the trustee, custodian or wrong-doer. So a creditor, having a lien upon a particular fund or particular property for his debt, may charge that fund in equity, and will not be turned away, merely because he has the right of action in a court of law against the debtor. In all these cases, the remedy by law is inadequate, because it does not enforce the right of the injured party to the full extent thereof. Such being the general policy of the law, do we not violate it by denying to the owner of standing timber his clear and indisputable legal right to have

it remain upon his land until such time as he shall see fit to convert it into a different kind of property? Moreover, standing timber is everywhere regarded as part of the real estate upon which it grows. The cutting thereof converts it into personal property and wholly changes its legal nature and incidents. Being a part of the land itself, it has no legal equivalent in nature or value, for no two pieces of land are alike in all respects, nor is a piece of land, stripped of its timber, with a right of action for the felled timber or for damages, the equivalent of the same land with the timber on it. Courts universally hold that all contracts relating to real estate are subjects of equitable cognizance, because they relate to real estate. A distinction is made between contractual rights respecting real estate and liability growing out of trespasses thereon. Because of the relation of landlord and tenant, a court of equity will always prevent such misuse of the property by the tenant as amounts to waste and injury to the freehold. Nevertheless, this Court and others have denied the same sort of relief in cases of like injury by trespassers. The wrong done by a tenant and that done by a stranger, being of the same character and of equal gravity, courts of equity grant relief in the one case and deny it in the other, upon the theory of adequacy of the legal remedy in the one and inadequacy thereof in the other. This difference rests, to some extent, upon reason and legal principle. A landlord cannot sue his tenant in ejectment or unlawful detainer and recover possession while the term lasts. In the case of a stranger, he may sue at any time. It does not follow, however, that the legal remedy against the stranger is adequate. The argument amounts only to this, that there is a legal remedy in the one case and none in the other. It does not extend to the question of adequacy of the remedy in the case in which there is one, for the reasons we have stated. Of course the legal remedy is adequate, if the trespass amounts to nothing more than the trampling of the grass or throwing down of the fences, acts in no way affecting the substance of the estate, but the adequacy of the remedy in such cases does not argue efficacy in those cases in which part of the real estate is actually severed and carried away to the injury and detriment of the inheritance. In *Whitehouse* v. *Jones,* 60 W. Va. 680, 690, Judge BRANNON condemned the rule

now under consideration in the following terms: "It seems to me that this doctrine is now, always has been, unsound. Timber is of such inestimable value for building and repairing houses and fences, for fuel and other purposes. It takes half a century or more to regrow it when once removed. A trespasser, without title, cuts it to-day, tomorrow and on. Must you sue him in suit after suit for each day's or week's depredation? Or will you wait until he gets through, then have a long law suit? The timber is gone forever, the party has become insolvent. The remedy is not full and adequate."

Upon the principles and considerations here stated, we are of the opinion that the adoption of this rule was a deviation from fundamental principles of our jurisprudence. It is no doubt attributable to a lack of appreciation of the true character of timber, due to its former abundance and comparative worthlessness. In early days, it was regarded as an encumbrance and burden upon lands. Having nothing but forests, the chief object or purpose of land owners everywhere was to get rid of the forests and prepare their lands for agriculture. There was an abundance of timber and no market for it. The soil was untillable because of the timber. Hence, it was a common practice for owners to cut down the finest of timber, faultless oak, poplar, pine, walnut and hickory, and burn it upon the premises in log heaps, upon the theory of a disposition of an encumbrance and obstacle to the growth and development of agriculture as a pursuit. Anybody who desired to cut a tree on his neighbor's land, in the pursuit of wild animals or the search for deposits of honey, had a tacit permission to do so. Forest fires were not regarded as evils unless they happened to destroy fences, buildings or other improvements or agricultural implements or products. Timber was not regarded as anything more than an ordinary commercial article and almost worthless because of its abundance. The prevalence of this estimate of its character was naturally calculated subtlely to influence the minds of the judiciary, for the judges were men then as they now are and always have been, mingling with the populace and insensibly and unconsciously absorbing, to a greater or less extent the prevailing sentiment of the people. The error, thus born, has been revealed by the great change of

conditions. Timber having become scarce and of great value, the layman, lawyer and judge has, in recent years, given the subject more careful, critical and profound consideration, with the result that the error is practically admitted everywhere.

Violative of principle, as we think, the rule is also contrary to the great weight of authority. In the general struggle for relief from it, courts have, in some instances, based distinctions upon the relative values of the timber and the land, saying the cutting of the timber, constituting the chief value of the land, will be enjoined, but we think a clear case of trespass by the cutting of timber should always be enjoined. In one sense, a small quantity of timber on land is more indispensable to its enjoyment than a large quantity. As to the weight of authority, see 5 Pom. Eq. Jur., sec. 495; 22 Cyc. 832; High Inj., secs. 671 to 679.

Our conclusion, treating growing timber as part of the real estate and placing it on the basis of minerals, applies the law enunciated in *Freer* v. *Davis,* 52 W. Va. 1, allowing an injunction to prevent irreparable injury, pending the determination of a dispute as to title by an action at law. This suit for an injunction was ancillary to an action of ejectment pending between the parties for that purpose.

On the motion to dissolve the injunction, a verdict in favor of the defendants in the action of ejectment was read, and it is here invoked in justification of the decree appealed from. In our opinion, it has not such force and effect. The order recording it is interlocutory. Though the verdict constitutes a basis for judgment, it is not a judgment. Besides, it may be set aside and thus wholly fail. It is said a motion to set this verdict aside was pending, but that, as it was not incorporated in this record, it cannot be considered. Deeming nothing short of a judgment conclusive of the question of title, we refrain from discussion of the question of practice. We know, as matter of law, the verdict alone is not a final adjudication and are not at liberty to forecast the final action of the trial court. Presumptively the verdict is right, but, to be effective as a mater of adjudication, it must be carried into judgment.

For the reasons here stated, the decree complained of will

be reversed, the injunction re-instated and the cause remanded.

*Reversed and Remanded.*

BRANNON, JUDGE:

This note does not evince any dissatisfaction with the opinion prepared by Judge POFFENBARGER. I write it only to give a short personal reason why I agree to overrule many decisions denying equity jurisdiction by injunction against cutting timber, in addition to those given by Judge POFFENBARGER. I am averse to overrule decisions; but the rule of those decisions is so bad that it ought not to stand. I expressed my dissatisfaction with the rule denying injunction on page 690 of 60 W. Va. in case of *Whitehouse v. Jones.* I write this note to say that a strong rule or argument to justify a court in overruling an erroneous decision is this, that when the continued operation of the erroneous decision will do more harm than would its overruling, it should be overruled. I referred to this rule in my opinion in *Weston v. Ralston,* 48 W. Va., page 180. I find the case of *Calhoun Co. v. The Ajax Co.,* 27 Colo. 1, laying down that position. It holds: "A wrong decision should not be followed unless it has been a rule of action so long, and relied upon to such an extent, that greater injustice and injury will result from a reversal, though wrong, than to observe and follow it." The erroneous decisions overruled in this case have been running on doing mischief all the time. Overruling them will avoid that mischief and do no harm, especially as it only relates to remedy.