HAYS LAW

*v.*

ELSIE W. MEADOWS, *et al.*

(No. 9974)

Submitted January 21, 1948.   Decided February 17, 1948.

*J. W. Maxwell,* for appellant.

*Grover C. Trail, Clay S. Crouse* and *Anthony J. Spara-cino,* for appellees.

FOX, JUDGE:

This is a suit in equity instituted in the Circuit Court of Raleigh County by Hays Law, against Elsie W. Meadows, and others, heirs at law and personal representatives of D. C. Meadows, deceased, seeking a decree that a deed from one Mattie Saunders to D. C. Meadows, dated September 8, 1936, and absolute on its face, be declared a mortgage to secure certain indebtedness originally due from Hays Law to Mattie Saunders. From a decree of the circuit court, entered on the 22nd day of May, 1947, denying relief to the plaintiff, and dismissing his bill, this appeal is prosecuted by him. The parties will be referred to as plaintiff and defendants, the positions they occupied in the trial court.

There is little dispute as to the facts. On May 22, 1933, Hays Law, being the owner of a tract of 4.02 acres of land in Raleigh County, conveyed the same to Mattie Saunders, in consideration of $10.00 cash in hand paid, and other good and valuable considerations, but the said deed contains the following paragraph:

> "It is understood and agreed by the parties to this deed and the same to be -inding upon the heirs, personal representatives and assigns of the respective parties hereto, that the grantor herein shall have the privilege of repurchasing this property within one year for whatever sum remains

unpaid of certain notes and interest thereon, said notes this day executed by the party of the first part payable to the party of the second part."

The matter drifted until January 3, 1936, on which date Mattie Saunders reconveyed said land to Hays Law. On the same day, and apparently as a part of the same transaction, Hays Law conveyed the property to Harry F. Payne, trustee, to secure to Mattie Saunders the payment of $932.46, represented by forty-seven negotiable promissory notes of even date therewith, one for $12.46 and the other forty-six notes for $20.00 each, executed by Hays Law, and payable to the order of the said Mattie Saunders in from one to forty-seven months, with interest at six per cent. The record shows that these notes represented purchase money which had been paid for the said land, and which had been loaned to Hays Law by Mattie Saunders. On August 19, 1936, Harry F. Payne, trustee, conveyed the said land to Mattie Saunders, following a trustee's sale under the deed of trust aforesaid. It is alleged in the bill, and there is some evidence in support, that this sale was one mutually agreed upon between parties concerned, and that Mattie Saunders continued to hold the notes secured by the deed of trust aforesaid. On September 8, 1936, Mattie Saunders conveyed said land to D. C. Meadows, by deed absolute on its face, subject only to certain reservations of mineral which had been reserved in former conveyances. Subsequent to this deed, and in a partial division of the estate of D. C. Meadows, who died in August, 1939, said tract of 4.02 acres of land was conveyed by the heirs-at-law of D. C. Meadows, other than the grantee in said deed, to Elizabeth Ferguson, a child and heir-at-law of the said D. C. Meadows.

The question presented on this appeal is whether D. C. Meadows acquired the legal title to the said land, subject to an equity of redemption vested in Hays Law, treating him as a mortgagor, and under which he is entitled to redeem the same, by the payment of the mortgage debt. This requires some discussion of the facts and circum-

stances leading up to the final transaction by which D. C. Meadows acquired title to the land involved in this controversy.

We think it quite plain that the original conveyance from Hays Law to Mattie Saunders was in fact a mortgage. The existence of indebtedness from Law to Saunders is evidenced by the deed itself, and, as we construe the provisions of the deed, quoted above, it means that upon the payment of this indebtedness the property was to be reconveyed to Hays Law. It specifically provides that Law should have the privilege "of repurchasing" the property within one year upon payment of certain notes. That we think is sufficient to justify the court in holding, as we do, that this deed, though absolute on its face, was, in fact, intended to be a mortgage.

Continuing to the next step in respect to this indebtedness, we find that on January 3, 1936, the parties then concerned evidently desired to make a change in the handling of the same, and, probably with the idea of making more definite provisions, and fixing the exact dates on which it should be paid, Mattie Saunders reconveyed the said land to Hays Law, for a nominal consideration, and on the same day Hays Law executed the deed of trust conveying the same land to Harry F. Payne, trustee, to secure the payment of certain definitely described notes. Following the execution of this deed of trust, the said land was sold by the trustee, purchased by Mattie Saunders, and conveyed to her by Harry F. Payne, trustee, on August 19, 1936.

If the dealings between the parties with respect to the original mortgage indebtedness had ended at that time, and there had been no further recognition of the existence of a debt due from Hays Law to Mattie Saunders, we would be inclined to hold that the parties, having a right to contract on fair terms in respect thereto, they, by the execution of the deed by Mattie Saunders to Hays Law, and the execution of the deed of trust by Hays Law to Harry F. Payne, trustee, the subsequent sale of the land

under such deed of trust, its purchase by Mattie Saunders, and its conveyance to her by the trustee, effectively destroyed the right of redemption theretofore vested in Hays Law, whether under the original mortgage, or the deed of trust. But it is clear from the record that, whatever may have induced Mattie Saunders to enforce the deed of trust, and to repurchase the said land, and have it conveyed to her by the trustee, she, subsequent to the latter conveyance, recognized that she held the property as security for an indebtedness due to her from Hays Law represented by the notes she continued to hold, and that she was willing to convey the property to any person for the amount of such indebtedness, provided Hays Law was consulted, and agreed. In her testimony, she states that, immediately prior to her conveyance to D. C. Meadows, the sum of $975.00 was the amount Hays Law owed her; that her understanding was that Meadows was purchasing the land, not because he wanted the property, but to help Law; that Law owed her at that time, and that if he paid her the amount due she would have conveyed the property to him, and that she would not have conveyed it to anyone else at the price of $975.00. The evidence is clear, we think, that D. C. Meadows took the title to the land with this knowledge, namely: that Mattie Saunders was willing to convey the property at the price which would cover the amount Law owed her, provided it was satisfactory to Law, and would aid him in any way to preserve his property. This, we think, creates an entirely different situation than would have been presented had not Mattie Saunders, herself, treated the deed of trust sale, and the conveyance of the land to her, as a continuance of the mortgage relationship theretofor existing between her and Hays Law.

There is some contention that the provision in the deed from Hays Law to Mattie Saunders dated May 22, 1933, was merely an option to purchase the 4.02 acres of land, to be exercised on the part of Hays Law within one year. An option, as we understand it, is the right granted by the owner of land to a prospective purchaser, vesting in him the right, for a stated consideration, to purchase

property within a specified time, which, if not exercised within the time fixed, becomes void and of no affect. Here, however, the relation of debtor and creditor is shown to have existed and that is usually determinative of whether the relationship of mortgagor and mortagee is created. That is one, and perhaps the most important element in showing the existence of a mortgage, because, of course, the existence of a debt is absolutely necessary to the creation or existence of a mortgage.

We do not have to resort to parol evidence to show the relationship of mortgagor and mortgagee, as it was established between Hays Law and Mattie Saunders, on May 22, 1933. The deed itself shows that. But even if the deed did not clearly show that fact, the same may be established by parol evidence, or by circumstances. Pomeroy's Equity Jurisprudence, 5th ed. Sections 1192-1196, Page 567; Hogg's Equity Principles 712; 36 Am. Jur., 759; *Davis, Committee* v. *Demming,* 12 W. Va. 246; *Lawrence* v. *DuBois,* 16 W. Va. 443; *Hoffman* v. *Ryan,* 21 W. Va. 415; *VanGilder* v. *Hoffman,* 22 W. Va. 1; *Gilchrist* v. *Beswick,* 33 W. Va. 168, 10 S. E. 371; *McNeel's Ex'rs.* v. *Auldridge,* 34 W. Va. 748, 12 S. E. 851; *Sadler* v. *Taylor,* 49 W. Va. 104, 38 S. E. 583; *Thacker* v. *Morris,* 52 W. Va. 220, 43 S. E. 141; *Hursey* v. *Hursey,* 56 W. Va. 148, 49 S. E. 367; *Fridley* v. *Somerville,* 60 W. Va. 272, 54 S. E. 502; *Hudkins* v. *Crim,* 72 W. Va. 418, 78 S. E. 1043; *Gibson* v. *Hopkins,* 80 W. Va. 756, 93 S. E. 826; *Napper* v. *Rice,* 127 W. Va. 157, 32 S. E. (2nd) 41; *Ross* v. *Midelburg,* 129 W. Va. 851, 42 S. E. (2nd) 185; *Holmes* v. *Basham,* 130 W. Va. 743, 45 S. E. (2nd) 252.

Perhaps the leading case in West Virginia on this question is *VanGilder* v. *Hoffman, supra.* It was there held:

> "Though a deed be absolute on its face, yet if it be shown by the circumstances surrounding the parties and by their parol declarations, that the land was conveyed as a security for money loaned, a court of equity will declare such absolute deed a mortgage, and when on the parol evidence it is doubtful, whether the conveyance should be regarded by a court of equity as an absolute deed or as a mortgage to secure a loan, the courts inclined to hold it to be a mortgage, * * *."

In the same case it was also held:

"If the proof offered to establish, that a deed absolute on its face was intended to secure a loan of money and was therefore a mortgage, consists only of the parol declaration of the parties, such proofs, in order to prevail must be clear and strong, if it be unaided by proof of the situation and circumstances of the parties and their conduct prior to, at the time of or after the execution of the deed. The following circumstances and facts have great weight in leading a court to the conclusion that a deed absolute on its face is merely a mortgage: First, that the grantor was hard-pressed for money, and that the grantee was· a known money-lender; second, that the actual execution of the deed was preceded by a negotiation for a loan of money by the grantee to the grantor; third, that the parties did not apparently consider or contemplate the quantity or value of the land, when the deed was made; fourth, that the price professedly given for the land on the face of the deed was grossly inadequate; fifth, that the possession of the land has remained with the grantor, whether rent be nominally reserved or not; and if no rent is even professedly reserved, this last circumstance is entitled to very great weight, if unexplained."

Each of the circumstances supporting the theory of a mortgage, mentioned above, exist in this case, except that there is no showing that D. C. Meadows was a known money-lender. The evidence is that negotiations were carried on between Meadows, Law and Mattie Saunders, prior to the conveyance to Meadows; the then value of the land was from twenty-five hundred to three thousand dollars, and the price for which Meadows obtained title to the land was nine hundred seventy-five dollars, and, therefore, grossly inadequate; the possession of the land involved was at all times with Hays Law, and the testimony with regard to payment of rent after the death of D. C. Meadows, though it was a circumstance sustaining the theory of the defendants, is by no means conclusive.

The authorities are clear that the intention of the parties should serve as a guiding star in interpreting deeds, absolute on their face, which are claimed to be in fact mortgages to secure the payment of money. Applying that rule to the showing made in this case, we are of the opinion that at no time, from the beginning of the transaction in 1933, until the conveyance to Meadows in 1936, was there any intention on the part of anyone involved to deprive Hays Law of his right of redemption. Meadows lived almost three years after he acquired title to this land, left Law in possession, and accepted money from him or his agent, and there is nothing in the record indicating that he, Meadows, claimed to be the absolute owner of the land. After his death, his heirs and personal representatives, apparently believed that absolute title had passed to them through inheritance, and when payments were made they were usually termed by them as rents, and receipts are in existence, and exhibited in the record, showing payment of rent, but in one instance stated as on property account. Of course a receipt for money is not absolute proof of the purpose for which it was paid, although there is a rebuttable presumption that the receipt correctly states the purpose of the payment.

The conveyance made by the heirs of D. C. Meadows to the defendant Elizabeth Ferguson, one of the heirs-at-law of D. C. Meadows does not place her in a status of an innocent purchaser. She is of course a purchaser for value, in that it represented a part of her interest in her father's estate; but she took title subject to any claims anyone might have against her father in respect to the land here involved. There can not be such a thing as an innocent purchaser where the estate of a decedent is being subdivided and conveyed in the division of an estate, because the date of the death of the owner of real estate, or other property, is the date that determines his real interest therein, and this is especially true as between heirs-at-law. There is a statute, Code 44-8-5, which permits, after the expiration of one year, the conveyance of the estate of a decedent by his heirs-at-law, under which the purchaser acquires good title as against creditors of a decedent, but

it cannot be said that under that statute the right of redemption of a mortgagor is cut off.

As we view the authorities, the law relating to the creation of equitable mortgages is in no wise affected by the statute of frauds, as they were first enacted in England, or as they have been recognized and reenacted in Virginia and in this State. The right of a debtor to show that a conveyance of land made by him, absolute on its face, was in fact a mortgage, has always been recognized, and it is likewise recognized that such showing may be made by parol evidence, or the facts and circumstances surrounding the transaction. Cases cited above show how this ruling has been accepted by this Court. The case of *Dye* v. *Dye,* 128 W. Va. 754, 39 S. E. (2nd) 98 is cited. That case can only be considered as authority on the proposition that in a situation where property is being sold at a judicial sale, and is purchased by a person who agreed with the former owner that upon payment of a certain sum of money he would convey the property involved, such agreement, to be binding, must be in writing. In that case there was no existing indebtedness. The person claiming the right to purchase was not bound to pay a debt. Here Hays Law was at all times obligated to pay a debt, and that was recognized by all concerned up to the date of the conveyance to D. C. Meadows, who, we think, fully understood and recognized that situation, and was bound thereby.

We therefore reverse the decree of the Circuit Court of Raleigh County, remand the cause with directions that upon a proper accounting and ascertainment of the indebtedness due from Hays Law to the estate of D. C. Meadows, and the payment of a sum found due, a proper decree be entered that, the tract 4.02 acres, aforesaid, be conveyed to the said Hays Law the plaintiff herein. On such accounting and decree, the plaintiffs are entitled to have a decree for the sale of the land covered by the mortgage aforesaid.

*Reversed and remanded
with directions.*