DELMER TATE, *et al.*

*v.*

W. AUSTIN WOOD

(No. 14914)

Decided March 19, 1982.

*J.M. Tully* for appellants.

*Donald K. Bischoff* for appellee.

HARSHBARGER, JUSTICE:

Delmer and Thelma Tate rented a Nicholas County house and lot from W. Austin Wood in August, 1977, agreeing to a one-year lease that required $200 monthly

payments and contained an option to purchase at anytime during the year for $29,500, with credit on the purchase price for half of the rental payments. If the Tates did not purchase, Wood was to pay them half the cost of property improvements they made. They were to insure the premises with loss payable to Wood.

During the lease term Delmer and Thelma made substantial improvements and paid $2,400 rent. They failed to obtain insurance, but Wood did, and when the lease expired in September, 1978, he wrote them asking for reimbursement.

That letter, dated September 19, 1978, included:

> I will be willing to extend this Lease & Option for another 30 days under the folling [sic] conditions.

| | | |
|---|---|---:|
| B. (1) | 1 months rent in advance | 200.00 |
| (2) | Payment on note due Sept. 15, 1978 | +100.00 |
| (3) | Payment for insurance (1 yr. $30,000.00 coverage) | 178.00 |
| (4) | Payment for county taxes (1 year) | 351.26 |
| | Total | 829.26 |

> The insurance and county taxes was a part of the original lease & option.
>
> Signed<br>W. Austin Wood
>
> Items 2, 3 & 4 are not due unless loan is approved and papers signed.

Tate did not secure financing by mid-October, so Wood's lawyer sent him an eviction notice. On November 17, 1978, Wood, through his lawyer, again wrote Tate:

> In any event, I have gotten Mr. Wood to agree to give you another 30 days to apply for and get your loan, and if you are successful in getting the loan,

then he will not require you to pay Items 3 and 4 in the letter which he sent you of September 19, but does require that you pay the other items listed above within the 30 days period.

That day the house burned. Three days later Tate received this letter. Wood settled his insurance claim for $30,045.10.

The Tates sued Wood for $12,578.80, being the cost of improvements plus $2,400 in rent payments; or alternatively $1,200, half the rental payments, and to compel transfer of the property and for the difference between the option price and the insurance proceeds. Wood counterclaimed for holdover rent ($400), taxes ($351.26), and furniture he sold Tate ($500), totaling $1,251.26. The trial judge determined that the Tates had not exercised their option and were limited to recovering one-half of their improvement costs; and although they were not by his ruling prevented from proving their improvement expenditures, they refused to do so. He granted summary judgment for Wood for $900, who chose not to present evidence about the taxes owed.

The Tate's option to purchase was extended for thirty days by the November 17th letter.[1] But "[a] mere option to purchase vests no right until accepted." *Dyer v. Duffy*, 39 W.Va. 148, 19 S.E. 540, 543 (1894), and Syllabus Point 2. An option to purchase is not a sale nor agreement to sell: it becomes an executory contract only when properly accepted within the stipulated time. *Pollock v. Brookover*, 60 W.Va. 75, 53 S.E. 795 (1906), Syllabus Points 1 and 2. We explained in *Pollock, supra* 53 S.E.2d at 796:

It is not a contract to sell, nor an agreement to sell, real estate, because there is no mutuality of obligation and remedy; but it is a contract by

---

[1] Wood's attorney, acting as his agent with respect to this property, had authority to extend the option. *Accord, Board of Education of Elk District, Mineral County v. Harvey*, 70 W. Va. 480, 74 S.E. 507 (1912). "Communication of an offer can be made by an agent of the offeror." *Charbonnages De France v. Smith*, 597 F.2d 406, 418 (4th Cir. 1979).

which the owner agrees with another person that he shall have the right to buy, within a certain time, at a stipulated price. It is a continuing offer to sell, which may, or may not, within the time specified, at the election of the optionee, be accepted. The owner parts with his right to sell to another for such time, and gives to the optionee this exclusive privilege. It is the right of election to purchase, which has been bought and paid for, and which forms the basis of the contract between the parties. Upon the payment of the consideration, and the signing of the option, it becomes an executed contract—not, however, an executed contract selling the land, but the sale of the option, which is irrevocable by the optionor, and which is capable of being converted into a valid executory contract for the sale of land by the tender of the purchase money, or his performance of its conditions, whatever they may be, within the time to which such offer has been limited. When such option is thus accepted, it becomes an executory contract for the sale of the land, with mutuality of obligation and remedy. . . . The offer must have been fully and completely accepted, in all its parts, and its provisions strictly complied with, before it became an executory contract. It is the complete acceptance of the option, by complying with all its provisions in that respect, that concludes the contract between the parties.

"An option, as we understand it, is the right granted by the owner of land to a prospective purchaser, vesting in him the right, for a stated consideration, to purchase property within a specified time, which, if not exercised within the time fixed, becomes void and of no affect." *Law v. Meadows*, 131 W.Va. 132, 46 S.E.2d 449, 451-452 (1948). Tate did nothing to communicate acceptance of Wood's offer. He did not even receive the renewed offer until several days after the fire. The trial court correctly ruled that the Tates had not exercised their option.

Had there been a "contract" rather than just an offer, destruction of the subject matter before performance may well have voided the contract because it was not perform-

able.[2] *Accord, Paxton Lumber Co. v. Panther Coal Co.*, 83 W.Va. 341, 98 S.E. 563 (1919), Syllabus Points 5 and 6. *See generally,* Annot., Modern status of the rules regarding impossibility of performance as defense in action for breach of contract, 84 A.L.R.2d 12 (1962 and later case service), particularly §§ 10 andd 19; 4B Michie's Jurisprudence, Contracts, §69.

So, when the house burned, Wood was the owner and insured, and was entitled to his insurance proceeds to compensate for his property loss. *Accord, Aetna Casualty & Surety Co. v. Cameron Clay Products, Inc.*, 151 W.Va. 269, 151 S.E.2d 305 (1966).

The lease provided that if the Tates did not exercise their purchase option, Wood would refund one-half of the cost of improvements they made to the house. They are entitled to that sum.

We affirm the summary judgment for Wood; and remand for further proceedings about the cost of improvements.

*Affirmed, and remanded for further proceedings consistent with this opinion.*

---

[2] The doctrine of equitable conversion, placing beneficial ownership and risk of loss on vendee, does not apply until there is an executory contract for sale of land. *See* Annot., Vendor and purchaser: risk of loss by casualty pending contract for conveyance, 27 A.L.R.2d 444 (1953 and later case service).