UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

J.S.K. REALTY COMPANY, a West
Virginia corporation,
                        *Plaintiff-Appellant,*

v.

NEW PLAN REALTY TRUST, a
Massachusetts Business Trust; THE
KROGER COMPANY, an Ohio
corporation,
                        *Defendants-Appellees.*

No. 00-2111

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CA-95-137-5)

Argued: January 25, 2001

Decided: May 1, 2001

Before NIEMEYER and KING, Circuit Judges, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Preston Bailey, BAILEY, RILEY, BUCH & HAR-
MAN, L.C., Wheeling, West Virginia, for Appellant. Mark E. Kogan,

SATZBERG, TRICHON, KOGAN & WERTHEIMER, P.C., Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** Christopher Paull Riley, BAILEY, RILEY, BUCH & HARMAN, L.C., Wheeling, West Virginia, for Appellant. Christopher N. Jones, SATZBERG, TRICHON, KOGAN & WERTHEIMER, P.C., Philadelphia, Pennsylvania; Ray A. Byrd, SCHRADER, BYRD & COMPANION, P.L.L.C., Wheeling, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

J.S.K. Realty Company ("JSK") appeals the district court's holding that it and New Plan Realty Trust ("New Plan") are bound by a signed written lease agreement and that JSK does not have the option to purchase the leased property. Two issues are before the Court. First, whether the district court erred in finding that JSK and New Plan did not enter an oral option agreement. Second, whether New Plan fraudulently induced JSK into entering the lease agreement with the promise of an oral option. During a two-day trial, the district court heard conflicting testimony as to the existence of the option agreement, found all the parties to be credible, and held that JSK did not meet its burden of proving that an oral option agreement existed. In addition, the district court held that JSK did not prove that New Plan made any material misrepresentation granting an oral option which induced JSK into entering the lease. Upon review, we hold the district court did not commit clear error in reaching its conclusions. Therefore, we affirm.

### I.

Sam Kusic, his wife, and his son were the sole shareholders of Moundsville Shopping Plaza, Inc., ("MSP") which owned the Mound-

sville Shopping Center. New Plan was a real estate investment trust and a developer of strip malls. For six months, Sam Kusic and New Plan engaged in intense negotiations for New Plan to purchase the Moundsville Shopping Center. The Moundsville Shopping Center consisted of two tracts of land: (1) a 18.5 acre developed tract ("Tract A"), and (2) a nearby 10.5 acre underdeveloped tract ("Tract B"). On December 27, 1988, the parties gathered to close the deal on the Moundsvile Shopping Center. The parties agreed to a $4,000,000 tax-free exchange of the MSP property for stock in New Plan Realty Trust. Federal tax laws were scheduled to change on January 1, 1999; therefore, the parties had to complete the transaction before December 31, 1998 in order to realize the tax benefits. Sam Kusic, on behalf of MSP, negotiated the sale on both tracts to New Plan. Originally, the parties contemplated only leasing Tract A. Eventually, the parties agreed that New Plan would purchase Tract B for 33,333 shares of New Plan Stock and New Plan would lease the property back to another company owned by the Kusic family, J.S.K. Realty Company. In sum, under the tax-free exchange MSP sold Parcel A and B to New Plan in exchange for New Plan giving the Kusic family 233,333 shares of New Plan Realty Trust and assuming the $495,632.20 mortgage debt on the property. (J.A. 517-536.)

On December 31, 1998, Sam Kusic, on behalf of JSK, entered into a signed formal agreement to lease Tract B from New Plan. (J.A. at 491-510.) In conjunction with the lease, JSK contends that New Plan granted JSK an oral unrestricted 10-year option to purchase Tract B for $500,000. However, the lease agreement from New Plan to JSK does not contain or reference an option agreement. Moreover, Article 20 of the lease agreement provides as follows:

### NO ORAL AGREEMENTS

> This Lease contains all the promises, agreements, conditions, inducements and understandings between Landlord and Tenant relative to the Premises and there are no promises, agreements, conditions, understandings, inducements, warranties or representations, oral or written, expressed or implied, between them other than as herein set forth.

(J.A. at 509.)

Three years after the closing, New Plan entered into a lease agreement with the Kroger Company ("Kroger") where New Plan leased Tract A to Kroger for a 20 year term. (J.A. at 616-657.) The Kroger lease purported to impose certain restrictions on Tract B. (J.A. at 617-19, 650.) JSK claims that Tract B was not subject to the restrictions set forth under the Kroger lease.

JSK filed suit against New Plan and Kroger seeking (a) declaratory judgment as to the parties' rights under the lease, (b) general and special damages against New Plan for alleged breach of the lease, and (c) declaratory judgment with respect to the enforceability of the option to purchase Tract B. The district court resolved the first two claims on summary judgment. Under its remaining claim, JSK sought declaratory judgment with respect to enforceability of the option to purchase Tract B. In the alternative, JSK sought rescission of the lease on the basis that New Plan misrepresented that it would grant JSK an option to repurchase Tract B which, in turn, induced JSK into entering the lease.

Judge Frederick P. Stamp of the Western District of West Virginia conducted a two-day bench trial. At trial, the parties presented several witnesses attesting to what occurred at the closing. According to the testimony of JSK's witnesses, New Plan's President, Arnold Laubick, agreed to grant JSK an option to lease Tract B. JSK stated that Laubick instructed the parties present at the closing to write down the dictated terms of the option on their respective file folders. JSK stated that Laubick orally represented to JSK its intention to honor the oral option. Laubick and another New Plan witness stated that New Plan was willing to enter into some form of an option agreement. However, New Plan's witness said that New Plan would have required a signed, written option agreement containing additional provisions including a reciprocal easement agreement. New Plan never signed any written option agreement.

At the conclusion of trial, the district court held that JSK failed to prove that there was a meeting of the minds with respect to the option agreement as written on the file folder. In addition, the court held that JSK failed to sustain its burden of proof to show that the land lease should be rescinded on the grounds of unconscionability or fraud in the inducement. Therefore, the court ruled that JSK was bound under

the lease agreement and the agreement did not include an option to purchase Tract B. JSK appeals.[1]

## II.

The district court's conclusion that New Plan neither granted JSK an option to purchase Tract B nor induced JSK to enter the lease with the promise of an option is not clearly erroneous and is properly supported by the facts. Rule 52(a) provides that if an action is tried without a jury then "the court shall find the facts specially and state separately its conclusions of law thereon . . . ." *See* FED. R. CIV. P. 52(a). To satisfy the demands of Rule 52(a), a district court must support its rulings by spelling out the subordinate facts on which it relies. *See Belcon Inc. v. Sherman Constr. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986).

A court of review should not set aside a finding of fact unless it is clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *See id*. A court of appeals may not reverse a district court if the district court's account of the evidence is plausible in light of the record when viewed in its entirety. *See id*. at 574. When a district court chooses one of two permissible views of the evidence, the court's choice is not clearly erroneous. *See id*. This is true even when the district court's findings are based on physical or documentary evidence instead of credibility determinations. *See id*. However, "mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewed de novo." *See Estate of Waters v. Commissioner*, 48 F.3d 838, 842 (4th Cir. 1995).

---

[1]This Opinion focuses on the interactions between JSK and New Plan. Kroger's interest in this matter exists to the extent that the outcome of this dispute may affect its rights under its lease. Kroger aligns with New Plan in its belief that the written lease agreement governs the arrangement between JSK and New Plan and that the alleged option does not affect its interest in Tract B.

### A.

The district court properly specified the factual basis, and arrived at a permissible conclusion, that New Plan did not grant JSK an option to purchase Tract B. An option to purchase is a contract under which the owner agrees with another that he will have the right to buy at a certain price for a specified period of time. *See Tate v. Wood*, 289 S.E.2d 432, 434 (W. Va. 1982). Therefore, a document representing an option must evidence a contract by the parties. A determination of whether circumstances fit within a legal definition of a contract is a finding of fact that must be reviewed for clear error. *See Brewer v. Hosp. Management Assoc., Inc.*, 503 S.E.2d 17, 20 (W. Va. 1998) (stating that "[w]hile the determination of what constitutes a contract . . . is a question of law, the determination of whether particular circumstances fit within the legal definition of a contract . . . is a question of fact"); *see also Kestler v. Bd. of Trustees*, 48 F.3d 800, 803 (4th Cir. 1994) (stating that the issue of whether a contract right exists is governed by state law). Therefore, as long as the district court's facts support its finding that no option contract existed, and the finding is plausible in light of the record when viewed in its entirety, then the reviewing court must uphold the decision.

### 1.

The district court specified a proper factual basis to support its conclusion that New Plan did not grant JSK an option on Tract B. An essential element of any binding contract is a meeting of the minds. *See Martin v. Ewing*, 164 S.E. 859, 861 (W. Va. 1932). The district court found that JSK failed to prove this element. JSK's witnesses testified that the parties entered an oral option contract for Tract B. *See J.S.K. Realty Co. v. New Plan Realty Trust*, No. 95-137-5, at 9 (N.D. W. Va. July 24, 2000); (J.A. at 322-27, 362-63.). New Plan's witnesses testified that New Plan refused to enter an option agreement because JSK would not enter into a signed written option agreement. *See J.S.K. Realty Co.*, No. 95-137-5, at 11; (J.A. at 305-7.). In addition, there was a suggestion at trial that a written option agreement may offend the viability of the tax-free exchange under existing tax laws. (J.A. at 455.) The district court found that it "has no reason to doubt the credibility of any of the witnesses, but rather believes that each witness recalls or understands the transactions to have taken

place in a particular manner." *See J.S.K. Realty Co.*, No. 95-137-5, at 16. Then, the district court concluded that JSK failed to prove that the parties had a meeting of the minds with respect to the option agreement. *See id.* at 20. It was plausible for the district court to find that opposing witnesses are credible even though they have conflicting testimony: the witnesses could have believed that the closing transpired as they testified. The district court's finding that no meeting of the minds took place is permissible in light of its conclusion that the parties believed different accounts of what transpired at the closing. Therefore, the district courts' finding that no meeting of the minds took place is sufficient under Rule 52(a) to support its conclusion that the parties did not enter an option contract on Tract B.

2.

The evidence as a whole supports the district court's conclusion that the parties did not enter an option contract. The statute of frauds calls for an agreement for the sale or lease of land to be in writing. *See Holbrook v. Holbrook*, 474 S.E.2d 900, 904 (W. Va. 1996). The agreement must be certain, in and of itself, or capable of being made certain by reference to extrinsic factors where a court can ascertain the agreement's terms with reasonable certainty. *See Milton Bradley v. Moore et al.*, 112 S.E. 236, 237 (W. Va. 1922). Under the parol evidence rule, extrinsic evidence of parties' statements about an unambiguous "instrument which occur contemporaneously with, or prior to its execution, is inadmissible to contradict, add to, detract from, vary or explain the terms of such instrument, in the absence of a showing of illegality, fraud, duress, mistake, or insufficiency of consideration." *See Edmiston v. Wilson*, 120 S.E.2d 491, 499 (W. Va. 1961). Article 20 of the lease agreement for Tract B contains a merger clause which states that all the promises and agreements with respect to the transaction were set forth in the contract. (A.P. at 509.) The lease is clear and unambiguous. There is no reference to New Plan granting an option to JSK to purchase Tract B. JSK claims that the district court failed to consider parol evidence such as the file folder and course of dealing between the parties to determine whether the parties agreed to an option on Tract B. Such evidence is not sufficient to alter the terms of the lease agreement.

Neither the file folder, nor the course of dealing between the parties, is sufficient to contradict or add to the unambiguous terms of the

lease agreement. JSK presents its attorney's file folder with illegible writings as documented evidence to support the existence of an option agreement. *See J.S.K. Realty Co.*, No. 95-137-5, at 10. The terms of the option cannot be determined from the face of the document. The terms, as interpreted by JSK, are as follows:

> (A) That during the first five years after the transfer of the property (December 31, 1988 to December 31, 1993), the plaintiff had the option of purchasing the leased property for the sum of $500,000, plus the federal and state capital gains taxes to be paid by New Plan on the purchase price and (B) that during the next five years (December 21, 1993 to December 31, 1998), the plaintiff had the option of purchasing the leased property for the sum of $200,000, adjusted upwards based upon the yearly increases in the CPI since December 31, 1988, plus the federal and state capital gains taxes to be paid by New Plan on the purchase price, or for the sum of $500,000, plus the federal and state capital gains taxes to be paid by New Plan on the purchase price, whichever is greater.

*J.S.K. Realty Co.*, No. 95-137-5, at 10. These terms do not identify the holder of the option nor do they express how the parties would exercise the option. Critically fatal to the claim, the file folder option was never signed by New Plan indicating that it assented to the terms. In short, the file folder writings are ambiguous and imprecise. These writings are contrary to the course of dealing between the parties. This transaction involved a tax-free exchange on property between sophisticated real estate investors. Prior to closing, the parties exchanged detailed drafts of the proposed lease. JSK hired a highly competent West Virginia attorney to help negotiate the land lease agreement. JSK also consulted the Arthur Anderson Company for tax advice about the transaction. In light of the sophistication of the parties and their approach to this transaction, it would appear that the normal course of dealing between the parties would have been to secure a signed written option agreement. On a whole, the file folder writings and the parties' course of dealing are not sufficient to supplement or contradict the clearly unambiguous lease agreement.

B.

The district court properly specified its factual basis, and arrived at a permissible conclusion, that New Plan did not induce JSK to enter the lease agreement. In order for JSK to show that New Plan fraudulently induced JSK into entering the lease agreement, JSK must show: (1) that New Plan committed the allegedly fraudulent act; (2) the act was material and false; (3) JSK justifiably relied upon the act; and (4) JSK was damaged because he relied upon it. *See White v. Nat'l Steel Corp.*, 938 F.2d 474, 490 (4th Cir. 1991) (citing *Lengyel v. Lint*, 280 S.E.2d 66, 69 (1981)). The district court found that JSK did not sustain its burden of proving fraudulent inducement because JSK failed to prove (1) the commission of a fraudulent act, and (2) justifiable reliance.

First, the district court found that New Plan did not commit a fraudulent act. Specifically, the district court found that JSK did not misrepresent any present existing facts to JSK. *See J.S.K. Realty Co.*, No. 95-137-5, at 20. The district court made this finding after listening to, and acknowledging, testimony from witnesses on behalf of JSK and New Plan who described what occurred during the closing.

Second, the district court found that JSK did not justifiably rely upon any alleged act. *See J.S.K. Realty Co.*, No. 95-137-5, at 20. The district court reached this finding after noting that (1) the parties' representations did not show the court that the parties entered an option agreement; (2) Article 20 of the lease agreement contained a merger clause which specifically prohibited any outside agreements not contained within the lease; (3) JSK produced no written signed option of any type with respect to Tract B; and (4) representatives of both parties were educated, sophisticated attorneys and businessmen who had substantial experience in real estate transactions. These findings of fact are sufficient to support the district court's conclusion that New Plan did not promise JSK an option which fraudulently induced it into signing the lease agreement.

The district court did not err in holding that JSK failed to meet its burden of proving that New Plan induced JSK to enter the lease agreement. The district court's findings, and the evidence submitted, supports the district court's conclusion. JSK had sophisticated attor-

neys and business men negotiating the deal on its behalf. The parties agreed to various terms for the leasing of Tract B as evidenced by the detailed 20 page lease. Prior to the closing, the parties reviewed, discussed, and exchanged drafts of this lease. The lease agreement contains no reference to an option agreement. Moreover, the lease specifically prohibits any outside written agreements. The district court found that the parties should have known that an oral option, signified by illegible writings on a file folder, would not be enforceable. The district court did not commit clear error in its conclusion that JSK, as a sophisticated party, did not justifiably rely on the option to purchase real estate which was not reduced to writing and was in consideration of signing an integrated lease which prohibits outside agreements. JSK should have known that the statute of frauds and the parol evidence rule would prevent such extrinsic, ambiguous, and undocumented evidence from altering an otherwise fully integrated lease. Therefore, the district court did not make a mistake in holding that New Plan did not induce JSK into entering the lease.[2]

## III.

The crux of this appeal involves what occurred during the December closing on the sale and lease of the former Moundsville Shopping Center. The district court properly specified the findings of fact on which it relied to reach its conclusion that no option agreement existed and that New Plan did not fraudulently induce JSK into entering the lease. The testimony of the parties, writings on the file folder,

---

[2] JSK raises additional issues which are immaterial in light of the district court's conclusion that JSK did not prove that the parties had a meeting of the minds. First, the district court did not err in allocating the burden of proof to New Plan for the affirmative defenses of laches and waiver because the district court found that JSK did not prove its prima facie case that an option agreement existed. Second, the district court did not err in failing to stop the parties from asserting statute of frauds because an instrument relied upon to take a contract out of operation of the statute of frauds must contain every element essential to an agreement. *See Milton Bradley Co. v. Moore et al.*, 112 S.E. 236, 237 (W. Va. 1992). Third, the court did not err by finding that the oral option agreement is not enforceable under West Virginia law because the district court's conclusion was an alternative to the court's original finding that the parties did not enter into an option agreement.

and course of dealing between the parties also support the district court's conclusions. Therefore, the district court did not commit clear error in its declaration that the parties are bound by the signed written lease on Tract B and JSK has no option to purchase this tract. Accordingly, we affirm.

*AFFIRMED*