655 S.E.2d 188

## AMERICAN CANADIAN EXPEDITIONS, LTD., a West Virginia Corporation, Plaintiff Below, Appellant

### v.

## The GAULEY RIVER CORPORATION, A West Virginia Corporation, and Mountain River Tours, Inc., a West Virginia Corporation, Defendants Below, Appellees.

### No. 33246.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 10, 2007.

Decided Nov. 21, 2007.

Paul O. Clay, Jr., Fayetteville, for the Appellant.

Lynn B. Pollard, Hamilton, Burgess, Young & Pollard, PLLC, Fayetteville, for the Appellees.

ALBRIGHT, Justice:

This case involves the appeal by the plaintiff below, American Canadian Expeditions, Ltd. (hereinafter referred to as "Appellant"), of the May 18, 2006, order of the Fayette County Circuit Court granting summary judgment to the defendants below, Gauley River Corporation and Mountain River Tours, Inc. (hereinafter referred to as "Appellees"). Summary judgment was granted

by the lower court in this case after the circuit court found that Appellant did not have a legal or equitable right to seek damages for timber removed from property during the time Appellant held an option to purchase the land. Having concluded our review of the issues raised in light of the arguments presented and applicable law, we find no error and affirm the decision of the lower court.

## I. Factual and Procedural Background

The parties to this appeal are white water rafting businesses. On May 1, 2002, Appellant entered into a real estate option contract with Appellees, giving Appellant exclusive right for a three-year period to purchase certain tracts[1] of real estate in Fayette County, West Virginia. At the same time, the parties also executed a "Deed of Easement."[2] The easement provided Appellant and its customers access to the river over the property. As consideration for the option and easement, Appellant paid $75,000. Under the terms of the option contract, another $ 175,000 would be due upon exercising the option; the option terminated on April 1, 2005. Logging or standing timber was not mentioned in either of the agreements.

In July 2002, Appellees contracted for the removal of timber from a portion of the option property and logging began in August 2002. The logging operation was completed before the end of the year. Appellees received nearly $42,000 for the timber removed. Appellees maintain that the logging was done while Appellant was regularly using the option property for its white water rafting business, and that the logging operation was clearly visible to anyone on the property.

Appellant filed suit in February 2004 seeking damages for the loss of timber and for damage the logging operation allegedly caused to the option property. During the pendency of this suit, Appellant supplied notice to Appellees of intent to exercise the option to purchase. The notice was later supplemented by letter advising Appellees

that the exercise of the option was not a waiver of any claim for damages, including the removal of timber. A closing was held on April 1, 2005, at which time legal title to the subject property was conveyed to Appellant.

On May 18, 2006, the circuit court granted summary judgment in favor of Appellees in the property damage suit. The lower court concluded that dismissal of the suit through summary judgment was appropriate because Appellant had failed to show that it had either a legal or equitable interest in the real property at the time the timber was removed and sold. Appellant petitioned this Court for review of the summary judgment determination on September 25, 2006, and the appeal was granted by order dated November 28, 2006.

## II. Standard of Review

As we have invariably held, "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). In proceeding with our review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

## III. Discussion

This appeal raises various issues regarding rights related to an option contract. Central among these issues is whether the holder of an option contract to purchase land has an in personam right to a claim of damages to the property occurring during the life of the option but before the option is exercised. Appellant essentially suggests that a type of conditional equitable conversion should be adopted in this jurisdiction whereby the holder of an option would be treated as an equitable or beneficial owner of the

---

1. The option contract concerned three tracts of land, with the largest measuring an approximate 212.5 acres, a second approximately 75 acres, the third approximately 27.5 acres.

2. Both legal instruments were prepared by Appellees' counsel; Appellant had not retained legal representation at the time the agreements were executed.

property from the date of the option contract when and if the holder exercises the option. By allowing equitable ownership rights to revert back to the date of the option contract, the holder of the option attains the right through exercise of the option to claim damages from the giver of the option for any detrimental changes occurring to the land during the life of the option contract. Appellees maintain that the lower court's ultimate conclusion that Appellant had neither a legal nor equitable interest in the property at the time the timber was removed was correct under the longstanding law of this state and that law should not be disturbed.

■■■■ Historically, our law affords no property interest in the holder of an option for the purchase of land before the option is exercised. As explained in *Pollock v. Brookover*, 60 W.Va. 75, 53 S.E. 795 (1906), an option contract

> is not a contract to sell, nor an agreement to sell, real estate, because there is no mutuality of obligation and remedy; but it is a contract by which the owner agrees with another person that he shall have the right to buy, within a certain time, at a stipulated price. It is a continuing offer to sell, which may or may not, with the time specified, at the election of the optionee, be accepted. The owner parts with his right to sell to another for such time, and gives to the optionee this exclusive privilege. It is the right of election to purchase, which has been bought and paid for, and which forms the basis of the contract between the parties. Upon the payment of the consideration, and the signing of the option, it becomes an executed contract—not, however, an executed contract selling the land, but the sale of the option, which is irrevocable by the optionor, and which is capable of being converted into a valid executory contract for the sale of land....

*Id.* at 78–79, 53 S.E. at 796. Following this discussion *in Pollock*, it was held that:

> An option given for the sale of land, supported by a valuable consideration, is not a sale of real estate, nor an agreement to sell, but is an executed contract, giving the optionee the exclusive privilege of purchasing within the time limited, and which

cannot be withdrawn during the time stipulated for; and upon acceptance within that time it becomes an executory contract for the sale of land, which may be specifically enforced in a proper case.

*Id.* at Syl. Pt. 2, 53 S.E. 795. The Court in *Pollock* relied upon the following legal principle announced in *Rease v. Kittle*, 56 W.Va. 269, 49 S.E. 150 (1904), in order to reach its conclusion: "Before payment or tender of the purchase money within the time stipulated [in an option contract], such contract does not vest in the person to whom the offer of sale is made any title to the land, *either legal or equitable* .... " *Id.* at Syl. Pt. 2, 49 S.E. 150 (emphasis added). The following discussion from the *Rease* case sheds further light on the ambit of this holding:

> A contract of this kind is in no sense a sale of the land, and vests no equitable title in the optionee. It amounts, at the most, to an irrevocable privilege of purchase. It is unlike an accepted offer of sale which constitutes a contract of sale, giving mutuality of remedy to both parties, by which either may enforce the specific performance of it. "An option contract to purchase is but a continuing offer to sell, and conveys no interest in the property." *Caldwell v. Frazier* [] 65 Kan. 24, 68 Pac. Rep. 1076. This was the case of a lease with an option of purchase, which, as above shown, is in all respects similar to the contract involved here. Between the offer and acceptance, the improvements on the property were destroyed by fire, and the plaintiff sought performance of the contract, with the improvements restored, or with an abatement in price equal to the value of the lost improvements. The court held that he had no interest in the property at the time of the fire, and, having accepted the contract after the loss, he must pay the full price.

*Id.* at 278, 49 S.E. at 153–54. Along these same lines in the later case of *Rutherford v. MacQueen*, 111 W.Va. 353, 161 S.E. 612 (1931), this Court found that the holder of an option to purchase real estate was not entitled to the benefit of insurance moneys collected by the giver of the option for fire damages occurring on the property before the option was exercised. To reach this con-

clusion it was held in *Rutherford* that "[a] party relying upon a contract is bound by all its legitimate terms." *Id.* at 354, 161 S.E. 612, 161 S.E. at 613. Another case involving property subject to an option contract which was destroyed by fire is *Tate v. Wood,* 169 W.Va. 584, 289 S.E.2d 432 (1982). As the holders of the option had not exercised their option, the Court in *Tate* observed that without an executory contract for sale of land, the doctrine of equitable conversion, placing beneficial ownership and risk of loss on the vendee, did not apply. *Id.* at 588 n. 2, 289 S.E.2d at 434 n. 2. *See* Syl. Pt. 1, *Bryant v. Willison Real Estate Co.,* 177 W.Va. 120, 350 S.E.2d 748 (1986) (defining application of equitable conversion when contract for sale of real property is executed). However, because an express provision of the lease-option contract at issue in *Tate* stated that the giver of the option would refund one-half of the cost of any improvements the holders of the contract made to the property if the holders did not exercise the option, the holders were entitled to damages based upon the agreement of the parties. 169 W.Va. at 588, 289 S.E.2d at 435.

As our review above discloses, even though option holders have no ownership interest in the subject land, they do possess rights stemming from the contract. The basic enforceable personal right attained by Appellant under the option contract was the right to purchase the property at a certain price within a prescribed period. *See Wheeling, Ohio & E.R.R. Co. v. Wheeling Coal R.R. Co.,* 94 W.Va. 536, 119 S.E. 551 (1923); *W.Va. Pulp & Paper Co. v. Cooper,* 87 W.Va. 781, 106 S.E. 55 (1921); *Dyer v. Duffy,* 39 W.Va. 148, 19 S.E. 540 (1894).

 Applying this rule, we hold that: During the option period of a real estate option contract, the optionee has no ownership interest in the property, or the timber on it;[3] absent specific language in the option contract to the contrary. Therefore, Appellant's enforceable rights under the terms of

this option contract were limited to being able to purchase the property at the agreed upon price within the agreed upon period. As with any contract, additional terms and conditions may be negotiated by the parties to an option contract and enforcement of those terms and conditions would be governed by contract law. No additional terms or conditions were stipulated in the option contract at issue. Having no equitable or legal ownership interest in the timber under our established law. and preserving no special right under the contract, the only remedy to Appellant's objection to the damage which may have occurred to the property during the option period was to not exercise the option. Clearly, the law contains no requirement for optionees to exercise their option and thus be forced to accept the damages and acquire ownership of unsuitable, if not unusable, property. Accordingly, we hold that the basic enforceable personal rights of the holder of an option to purchase real estate include the right to purchase the property at a certain price within a prescribed period. As with any contract, additional terms and conditions may be negotiated by the parties and enforcement of those terms and conditions would be governed by contract law.

While the result in this case may appear harsh, it is based on the principles which parties entering into option contracts have relied upon for over a hundred years and cannot be said to come as a surprise. A harsh result does not necessarily imply an unfair or unjust process.

Our examination has not revealed that there is a genuine issue of fact for trial or that inquiry into the facts would clarify the application of the law in this case.[4] Accordingly, we affirm the lower court's grant of summary judgment for Appellees.

### IV. Conclusion

Based upon the foregoing, the May 18, 2006, order of the Fayette County Circuit

---

3. Appellant correctly maintains trees are considered a part of the realty on which they stand under the law of our state. *Pardee v. Camden Lumber Co.,* 70 W.Va. 68, 75, 73 S.E. 82, 85(1911).

4. We do not reach the remaining issues raised by Appellant involving notice, waiver of rights and treble damages pursuant to West Virginia Code § 61–3–48a (1983) (Repl.Vol.2005).

Court granting summary judgment to the defendants below is affirmed.

Affirmed.